OPINION OF THE COURT
Richard A. Dollinger, J.
Foreign custody judgments have their own enforcement rules in New York but, at times, New York’s homegrown rules for evaluating justice and fairness in custody determinations carry the day in resolving a foreign national’s access to his children. In this matter, a father moves to enforce a judgment of divorce from Singapore which, according to the father, allows him unsupervised time with his two children. He seeks to have the judgment registered in New York, and further seeks contempt against his ex-wife (the mother) for wilfully interfering with his access to his children and other associated relief. The mother cross-moves to vacate the Singapore divorce decree, and for other associated relief.
In 2005 the couple were married in Singapore. For six years, the couple resided in Singapore where the father’s family resides. The couple’s two children were born in Singapore. In 2011, the wife announced that she wanted to return to Rochester, her family’s home. The husband avers that he agreed to permit the relocation provided he had “liberal and unhampered” access to this children “whenever I traveled to New York to visit” and provided further that they would occasionally visit him in Singapore, “where my entire family resides.” The husband provides no further specifics on the extent of the alleged agreement with his wife regarding his access to his children after they returned to the United States. The husband describes this arrangement as an oral agreement between himself and his ex-wife verbalized in the fall of 2011. There is no evidence in this record of any written agreement between the husband and wife setting forth the “liberal and unhampered” visitation.
In September 2011, the husband commenced a divorce action in Singapore under Singapore law. In his application to this *976 court, the husband includes a “writ of divorce,” filed with the Singapore courts on October 19, 2011. The writ is addressed to the wife and states that a writ of summons was issued by the husband against the wife. The writ states that a series of documents were delivered with the writ.[1] Among the documents delivered with the writ was a “proposed parenting plan.” The parenting plan contains, in parentheses, the words “(by plaintiff [father]).” The plan describes the children and includes a section marked as “current arrangements” and when describing those arrangements states, “there is currently no fixed access.” In the “proposed arrangements” section, the parenting plan proposed by the father states that the wife will have “care and control” of the children and the father will have “reasonable access.”[2] In the text of the writ of divorce, the wife is given the option, if she disagrees with the “proposed parenting plan,” to “state your own proposed arrangements for the children,” file the alternate proposal with the court, and serve a copy of the proposal upon the husband’s attorney. The papers delivered with the writ also contain another proposed pleading entitled “defendant’s agreement to proposed parenting plan (by plaintiff [father]).” In this document, the first paragraph states that the defendant wife “agree[s] with the following orders sought in paragraph 4 of the Proposed parenting plan (by plaintiff [father]).” This document includes blank spaces for the wife’s name, her signature, passport number and date. In the documents before this court, this document is unsigned. There is no allegation before this court that the wife signed this document. The wife does not dispute that she received a copy of this writ.
*977 As part of the litigation, the wife went with her husband to an attorney, where she signed a consent to grant judgment on three years’ separation on October 19, 2011—the same day that the writ was filed with the Singapore courts. The “consent” document is a single page, and the wife’s signature is not notarized. The wife acknowledges that she signed the document and does not dispute that the signature on the document is authentic. The document simply states that the wife “consented] to the judgment being granted.” The document makes no reference to any other document. Two days after she signed the consent, the wife was sent an email from the husband’s attorneys. The email stated that the papers had been approved for filing and invited the wife to come to the attorney’s office to “accept the papers” and sign the acknowledgment of service and a “memorandum of appearance.” The wife has produced a blank copy of the acknowledgment of service and the memorandum of appearance. There is no evidence before this court that the wife signed either document. However, according to her affidavit before this court, on October 27, 2011, she went to her husband’s attorney’s office and signed a memorandum of appearance which she acknowledges stated that she would not contest the divorce. The wife never mentions the acknowledgment of service. She admits that she had “agreed to the terms of the proposed parenting plan,” but there is no evidence that she signed any document indicating her explicit approval. She states that she “had very little choice as I had no money.”
Three days later, on October 30, 2011, the wife left Singapore and took her children with her. What followed in Singapore is undisputed. The consent to grant judgment, signed by the wife, was converted into an “interim judgment” on November 17, 2011. Neither party was present when the interim judgment was rendered. The judgment reads that “further orders” were made by the judge “by consent.” The document gives no evidence regarding what was meant “by consent” and there is no reference to any other document. The judgment gave “care and control” of the children to the wife and then indicated that the wife could remove the children from Singapore.[3] The judgment gave the husband the “liberal unsupervised visitation” including overnight access, reasonable vacation periods during holidays, electronic access through Skype, and other means and the right for the husband to bring the children back to Singa *978 pore on vacation. He was required to give two weeks’ notice of his visitation and to pay the travel expenses. There is no document before this court, signed by the wife, in which she agreed to these specific terms. Thereafter, a final judgment of divorce was issued in 2012. The final judgment made no reference to the father’s visitation or consent by either party—it simply dissolved the marriage.
In his current application, the husband argues that the wife has denied him access to the children, interfered with potential visits with him in Rochester (when the father came to see his children) by scheduling conflicting events, interrupted telephone communication, and denied him access to the children’s report cards and other school information. The husband contends that when he comes to Rochester to visit his children, the mother refuses to allow the children to spend overnights with him. He also alleges that his ex-wife denied him access on Christmas Day in 2011, denied overnight visits on Easter 2012 and 2013, denied overnight visits during the summer of 2013, and denied reasonable access to the children on Christmas 2013. The husband alleges that the wife limits Skyping or other electronic communication to only once a week. Lastly, the husband argues the wife has not permitted his children to visit him in Singapore.
In the mother’s response, she initially seeks to vacate the Singapore decree of divorce, claiming that she was a victim of domestic violence. She describes an incident in July 2009 in which she claims that she was assaulted. She describes the father’s rage in several incidents during their marriage in Singapore, but in all but one, no one was harmed. However, the wife describes how her husband became enraged and allegedly pushed and slapped her during one incident, in August 2011. She states that thereafter, she needed knee surgery, which she received in Singapore. After these incidents, the wife attests that “it was very important for me to get the plaintiff to agree to allow me to leave the country with the children.” There is no allegation by the wife that she mentioned the husband’s alleged domestic violence at any time during her visits with attorneys in Singapore. After she signed the divorce documents, the wife left Singapore and took her children with her. A month later, the wife got an email from the attorneys and it contained the interim judgment, which detailed the now-disputed specifics of the father’s “reasonable access” including the right to have the children travel to Singapore (provided he pay the travel expenses) and other provisions.
*979 In further rebuttal to the husband’s claims, the wife’s affidavit before this court contains a litany of comments that suggest she is using a shotgun approach to discredit her former husband. She casually mentions—without any corresponding authority— that he suffers from bipolar disorder.[4] She condemns his smoking and raises a specter that smoking impacts one of their son’s asthma, but there is no medical data proffered to support this claim. She adds that she does not “trust the husband to keep his anger in check.” However, the wife accompanied the husband on his visits with the children and there is no evidence, during the repeated visits by the father to Rochester, that his “anger” (as the wife describes it) has ever flared up or caused the children any trepidation. The wife also challenges the husband’s version of spring break in April 2013 and the request for travel to Singapore in 2013. She claims that the husband never made such requests, with the exception of the summer of 2012, and at that time she told him that the children were too young to travel. The wife also strongly disputes the husband’s claim that his agreement to have the children relocate to Rochester was based on her agreement that the children would travel to Singapore “at least once per year.” The wife’s disagreement here is somewhat limited. She does not dispute that she agreed that the children would have the option to travel to Singapore—she simply disputes whether it was scheduled to happen every year. The wife does state that she repeatedly told the father that the children could not stay overnight with him “until they were older and could make decisions on their own.” In these conflicting versions of events, a number of items are undisputed. After the entry of the judgment of divorce in Singapore, the father visited Rochester and the wife would not allow him overnight visitation. In 2013, the husband sought summer time with his children, but was told that his ex-wife had enrolled them in summer camp for the entire summer and he was unable to see them. Over Christmas break in 2013, the husband claims he visited Rochester, but the wife enrolled the children in a program that consumed most of the daytime, and refused *980 to allow the husband to have access without her present. In addition, it is undisputed that the wife has never permitted the children to travel to Singapore. The wife admits that she never allowed the children to stay overnight with their father when he was in Rochester because she made the decision that they were too young. In April 2014, the father again visited with his children. The wife told him that she did not want him to take the children to New York City, but the father took them anyway and returned them on Easter Sunday. According to the wife, the husband impeded the mother’s ability to communicate with her children via telephone while they were with him. She describes the New York City trip in April 2014, as an instance in which the husband “violated my trust.” After the episodes in April 2014, the father complained about the mother’s interference with his visitation and eventually, she was contacted by the father’s counsel.
The husband then brought this application requesting that the court: (a) register the foreign judgment of divorce and the custody order; (b) determine that the wife was in contempt for failing to follow it; (c) direct future compliance; (d) grant “make up time” to the husband; (e) require the posting of a bond to insure future compliance; and (f) grant attorney’s fees. In contrast, the wife moves to vacate the visitation provisions of the Singapore judgment, and makes 12 changes, including limiting the father’s visitation, prohibiting the children from traveling to Singapore, increasing the notice to 30 days before visitation, increasing the wife’s telephone contact, and permitting the wife to control the children’s passports. None of these terms are included in the consent to judgment for divorce and none are included in the interim or final judgment of divorce.
This court notes that the wife does not contest that the Singapore court had jurisdiction over her and the children at the time of the divorce. She never alleges that the Singapore court, in granting the divorce, deviated from any reasonable procedural or substantive rules of the nation of Singapore, and does not suggest that the procedural rules, utilized by the Singapore courts, deviate from comparable procedural rules of the State of New York.[5] In addition, she does not seek to invalidate the entire agreement and require the negotiation of an entirely new one. *981 Instead, she selectively seeks to alter only the husband’s visitation rights under the prior agreement. Nowhere in her application to this court does the wife suggest that she did not have an agreement with her husband when she left Singapore. She never explicitly denies that she agreed to give the husband “liberal and unhampered” access to the children. She never denies that she agreed the children could travel to Singapore and visit. She argues instead that, based on disputes with her former husband over the terms of the agreement, she wants the agreement changed to substantially restrict his visitation. Nowhere does she suggest that the remaining terms of the agreement are unfair or unenforceable.
Registration of the Custody Determination under the UCCJEA
The husband argues that section 77-d of the Domestic Relations Law (Uniform Child Custody Jurisdiction and Enforcement Act [UCCJEA]), permits this court to register the Singapore judgment of divorce and the custody order, a necessary prerequisite to its enforcement against the wife, and a predicate to any contempt proceeding.
“The UCCJEA is mandatory and provides that ‘a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this article must be recognized and enforced,’ except where ‘the child custody law of a foreign country as written or as applied violates fundamental principles of human rights.’ ” (S.B. v W.A., 38 Misc 3d 780, 809 [Sup Ct, Westchester County 2012], quoting Domestic Relations Law § 75-d [2], [3].)
The court opinion in S.B. v W.A. is instructive in unraveling this dispute, but its reach only extends so far. In that case, there was a dispute over child custody, specifically a challenge to a determination made in the United Arab Emirates (UAE). The court held that the foreign court had jurisdiction and had held hearings on the custody matter. The award of custody was reviewed by several courts on appeal in the UAE, and one parent later sought to change custody. Those requests were denied *982 and affirmed on appeal by the courts in the UAE. Thus, in S.B. v W.A., the custody determination, made by a court after due process, and eventually upheld on appeal by the courts of the foreign state, qualified for registration under the UCCJEA.[6]
Whether the visitation provisions in the judgment of divorce now before this court meet the jurisdictional standards of article 5-A of the Domestic Relations Law, when there is no evidence that the wife ever signed any document evincing her agreement to those explicit provisions, requires further analysis. The UCCJEA defines “child custody determination” as an order of a court providing for visitation with respect to a child (Domestic Relations Law § 75-a [3]). The Singapore interim judgment is a “child custody determination” within the meaning of the UCCJEA. There is no claim by the wife that the Singapore court improperly applied the laws of Singapore in adding the language which spelled out the husband’s visitation rights. The core of the wife’s complaint before this court is twofold: (1) that the interim judgment of divorce, which contains the specific description of the husband’s “liberal” access rights, was modified without either the wife’s consent or the findings of a court after a hearing[7] and (2) she claims the divorce was procured, in part, as a result of domestic violence against her.
To deny registration on the first ground, the wife must establish that the insertion of the specific terms of visitation, without her consent or a hearing, was not undertaken in “substantial conformity” with “jurisdictional standards” embodied in article 5-A of the Domestic Relations Law or otherwise violates “fundamental principles of human rights.” (Domestic Relations Law § 75-d [2], [3].) The case law under the UCCJEA involves jurisdictional disputes between New York and other American states or between New York and foreign countries. (See Arnold v Harari, 4 AD3d 644 [3d Dept 2004]; Matter of Brett M.D. v Elizabeth A.D., 110 AD3d 424 [1st Dept 2013].) The clear import of the phrase “in substantial conformity *983 with the jurisdictional standards” is that the state or foreign government that issued the child custody order must have met some minimum contacts over the parties in order to register a child custody order from outside New York. The wife’s complaint that she never signed any document agreeing to the exact terms of the visitation cannot be characterized as a “jurisdictional dispute” under the UCCJEA. The wife, by signing the consent to grant judgment, acknowledged the jurisdiction of the Singapore courts and, hence, she cannot invoke this concept to upend the terms of the interim judgment.
Her only argument under this section is that the failure to have given written consent to the visitation terms in the interim judgment violates some “fundamental human right.” There is no case law, found by this court, which gives any guidance in interpreting the legislature’s use of the phrase “violates fundamental principles of human rights.” (Domestic Relations Law § 75-d [3].) Fundamental human rights are not defined in the UCCJEA, but the legislative history of the statute strongly indicates that it was not intended to cover this aspect of the wife’s complaint. In the statement of intention to the UCCJEA, passed in 2001 in New York, the legislature made reference that the intention of the statute is to provide an effective mechanism to obtain and enforce orders of custody and to do so in a manner that ensures that the safety of the children is paramount, and that victims of domestic violence and child abuse are protected. (L 2001, ch 386, 2001 NY Assembly Bill A4203.) In evaluating this aspect of the wife’s claim, this court notes that another portion of New York law provides some guidance in determining whether the wife’s “fundamental human rights” were violated. Article 53 of the CPLR, which involves the enforcement of foreign money judgments, suggests that such a foreign judgment should be enforced under the principles of comity unless recognition of the judgment would do violence to some strong public policy of this state. (Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d 78, 82 [2006].) The public policy inquiry rarely results in refusal to enforce a judgment unless it is “inherently vicious, wicked or immoral, and shocking to the prevailing moral sense.” (Intercontinental Hotels Corp. [Puerto Rico] v Golden, 15 NY2d 9, 13 [1964].) In this court’s view, the Singapore court’s incorporation of the “liberal and unsupervised” visitation terms, even if the wife never gave her written consent to those terms, does not violate the wife’s “fundamental human rights.” First, the interim judgment of divorce gave the *984 wife a three-month period of time to object to any term of the interim judgment. The wife never filed any objections. Having been given the opportunity to object and have the Singapore court consider her objections, the wife never said a word, even though, throughout all of this time, she was living with her children in the United States. Thus, if the wife had the right to object to the specific terms of the visitation under the interim judgment, she waived it by failing to do so. In reaching this determination, the court concedes that the wife’s right to either agree to the terms of the visitation or have a hearing after which a judge decides those questions, reflects New York’s public policy that a parent should have substantial input into the issues related to visitation with his or her spouse. New York’s public policy requiring that a parent’s consent to terms of visitation be in writing, signed by both parents, is long-standing.[8] (Domestic Relations Law § 236 [B] [3]; Birr v Birr, 70 AD3d 1221, 1222 [3d Dept 2010] [an agreement such as this open-court stipulation of settlement must be in writing, subscribed by the parties, and acknowledged or proved in the manner required to entitle a deed to be recorded]; Matter of William C. v Zaida T., 10 Misc 3d 1057[A], 2005 NY Slip Op 51996[U] [Fam Ct, Queens County 2005] [court refused to honor a seven-year-old oral visitation agreement].) Oral stipulations entered in open court in which both parties evince their written consent to the terms of an agreement may be enforceable as a matter of public policy. (Denburg v Parker Chapin Flattau & Klimpl, 82 NY2d 375, 383 [1993].) But, extrajudicial agreements which concern the custody and visitation of minors are not binding on a court. (Matter of Cook v Rabinowitz, 5 AD3d 594 [2d Dept 2004]; Goodman v Goodman, 228 AD2d 388 [1st Dept 1996].) Agreements affecting children—oral or otherwise—are always subject to the supervisory role, and supervening power, of the court. (Agur v Agur, 32 AD2d 16, 19-20 [2d Dept 1969].) While this public policy of parental input or participation in visitation by spouses is substantial in New York, the Singapore court’s inclusion of the “liberal and unsupervised visitation terms,” without the wife’s written approval or holding a hearing, does not constitute a step that can be considered vicious, wicked, or immoral, and/or shocking to the prevailing moral sense of the court, or violative of the wife’s fundamental human rights.
*985 The more important inquiry, given the wife’s papers, is whether the allegations of domestic abuse, alleged to have occurred before the wife signed the consent to grant judgment, are within the scope of “fundamental human rights” within the UCCJEA. The wife’s allegations relate to several incidents that occurred well before the signing of the divorce papers. The most significant incident—alleged by the wife and heatedly rejected by the husband—occurred two months before she signed the consent and resulted in a surgical intervention for her knee. There is no allegation of continuing abuse during the two-month interval between the date of this incident and the date she signed the consent to judgment. In considering these allegations, the court notes that the husband heatedly denies these allegations, which date to the fall of 2011. In considering whether domestic abuse prompted the wife to agree to this divorce or the terms of the visitation, the court cannot overlook the fact that the wife admits that she wanted—“more than anything”—to return to the United States with her children. Even if this court, ignoring the husband’s denials for the moment, credits the wife’s allegations that domestic abuse may have caused her desire to terminate her marriage, the reason why she signed the papers consenting to the judgment was, by her own admission, that the husband had agreed that he would allow her to return to the United States and provide “care and control” of the children.
The wife bargained for that essential term: the right to leave Singapore with their children. The husband agreed, and although she claims that she never expressly agreed to the exact visitation wording, there is no evidence that when presented with the judgment of divorce, she voiced any opposition. In addition, the wife cannot point to any portion of the judgment that is unfair or unjust, except, as she contends, the extensive visitation rights given to the husband. The custody and care determination from the Singapore court cannot be described as substantially adverse to the wife. She got the right to remove the children from Singapore and live with them in the United States, even though the children were raised in and were citizens of Singapore. The wife receives maintenance and child support, and the father pays all the children’s medical expenses and college costs. The wife makes no claim that any of these ex *986 penses have been unpaid.[9] For these reasons, this court cannot conclude that the allegations of domestic abuse—even if fully credited—caused the wife to enter into a divorce decree that is adverse to her interests.
In attempting to determine whether the foreign custody determination—in dictating terms of the father’s visitation rights—is enforceable in New York, this court also focuses on Domestic Relations Law § 75-e, which makes the Singapore determination binding if the wife was “given an opportunity to be heard” on the visitation issues before the Singapore court.[10] The wife’s pleadings in this case, read broadly, make the argument that she was never given that opportunity because while she signed the consent to judgment, she never signed any agreement containing the specific terms of visitation. However, the New York statute does not require that the wife’s view on the visitation “be heard”; it simply requires that she be given the “opportunity to be heard.” [11] As noted earlier, the wife was extended that opportunity by the Singapore courts: the interim judgment includes a “pronouncement” by the judge that “unless sufficient cause be shown,” the judgment would become final in three months. The wife does not dispute that she was served with a copy of this interim judgment and makes no claim that she was unable to respond to dispute the contents of it. In this court’s view, the wife was extended, by the terms of the interim judgment, an “opportunity to be heard” on the extent of the husband’s visitation rights. Because she was extended that opportunity and declined it, the custody determination from Singapore binds her in this proceeding.
In addition, even if this court concludes that the inclusion of the “liberal unsupervised visitation” in the interim judgment of divorce violated a procedural right of the wife to a hearing or a written agreement under New York law, the end result—the terms of the “liberal unsupervised” visitation, which permit the *987 father to have overnights with his children, communicate with them by phone and have them travel to Singapore—do not qualify as “shocking to the moral sense” of this court. The language, inserted by the Singapore court, does not offend this court’s view of the fundamental right of the wife regarding her children. The language inserted by the Singapore court reflects a reasoned approach to applying the “reasonable access” standard—to which the wife admits she did agree—to the father’s long-distance relationship with his children. As noted infra, the terms of this visitation are not markedly different from the access rights accorded distant parents under well-established New York precedents. Because the visitation language in the interim judgment of divorce does not qualify as a “violation of the wife’s fundamental human rights,” the custody determination of Singapore and the language governing the father’s access rights to his children are entitled to be registered under the UCCJEA and are enforceable against his wife.
The Application for Contempt for Violation of the Singapore Judgment
Because the visitation decree is enforceable under the UCCJEA, this court must consider the husband’s application to enforce it through contempt. A finding of contempt requires this court to find “(1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the order was disobeyed and the party disobeying the order had knowledge of its terms, and (3) that the movant was prejudiced by the offending conduct.” (Bernard-Cadet v Gobin, 94 AD3d 1030, 1031 [2d Dept 2012].) The wife does not contest that she knew the terms of the visitation and declined to honor them. The husband has been prejudiced by her conduct as he has lost opportunities to interact with his children as the order permits. The wife’s disobedience frustrated and impeded the father’s right to be with his children, a right which has been deemed to be “far more precious . . . than property rights.” (Entwistle v Entwistle, 61 AD2d 380, 384 [2d Dept 1978], quoting May v Anderson, 345 US 528, 533 [1953].) Willful interference with a noncustodial parent’s right to visitation is so inconsistent with the best interests of the children as to, per se, raise a strong probability that the offending party is unfit to act as a custodial parent. (Matter of Ross v Ross, 68 AD3d 878 [2d Dept 2009].) In this case, the interim judgment laid out specific terms for the father’s visitation and the wife, in undisputed conduct, has *988 failed to follow its dictates. (Mullen v Mullen, 80 AD3d 981 [3d Dept 2011].) There is no claim that the custody provisions are indefinite or lack specifics. (Matter of Wallace B.O. v Christine R.S.-O., 12 AD3d 1057, 1057 [4th Dept 2004] [contempt not found only if the judgment is “fatally indefinite and uncertain”].) The interim judgment from Singapore is clear and unequivocal. Based on these undisputed facts, the wife is determined to have violated the terms of the judgment of divorce through the following conduct:
1. denying the father unsupervised overnight parenting with his children at reasonable intervals during the last two years; and
2. denying the father the right to have his children visit him in Singapore during the last three years.[12] (Matter of Kellezi v Kellezi, 106 AD3d 737 [2d Dept 2013] [contempt finding for violation of visitation order]; Matter of Wiebke v Wiebke, 77 AD3d 964 [2d Dept 2010].)
While the court finds that the wife is in contempt for such undisputed violations of the judgment, this court will allow the wife to purge her contempt by permitting the father to do the following without interference:
1. the father shall have the right upon two weeks’ notice to two one-week periods of visitation with the children between the date of this order and the end of calendar year 2014;
2. the period of visitation permitted by this section may include, at the father’s choice, the school vacation over the Christmas holiday, if the father so elects;
3. during one of these two one-week periods, the father may extend the visitation from the last day of school for 10 consecutive days—including, but not limited to a Friday until the following Monday morning—and further may remove the children from the United States and take them to any location, including Singapore, provided that he gives the mother an itinerary 10 days before the visitation occurs and provides the children with a cell phone by which their mother may contact them each day they are absent;
4. by January 1, 2015, the father shall notify the mother of his preference for visitation with his sons on either the Febru *989 ary break or the April school break and he may, at that time, remove the children from Monroe County and from the United States and he shall have the entire period of the school vacation; and
5. the wife shall pay the cost of any cellular phone for her children while they are participating in visitation with their father for a period of two years from the date of this order; and
6. the wife shall reimburse the husband up to $500 for travel expenses incurred by the father each time he visited Rochester, New York in the period from 2011 through the date of this order.
New York law permits the party in contempt to purge the contempt by performing the act required, or by undoing or reversing the acts constituting the contempt. (Matter of Silverstein v Aldrich, 76 AD2d 911 [2d Dept 1980].) New York courts have permitted a party to purge his or her contempt in matrimonial matters, including visitation disputes. (Matter of McMinn v Taylor, 118 AD3d 887 [2d Dept 2014]; El-Dehdan v El-Dehdan, 114 AD3d 4 [2d Dept 2013].) If the wife fails to perform these acts within a reasonable time, the court will consider, upon proper application, further penalties.
The Wife’s Application to Vacate or Modify the Judgment
The wife has cross-moved to either vacate the judgment of divorce or modify the terms of the visitation. Pursuant to CPLR 5015 (a), a court may vacate an order upon the grounds of excusable default, newly discovered evidence, fraud, misrepresentation or other misconduct, lack of jurisdiction to render the order, or reversal of a prior order or judgment upon the which the current order is based. (Beckwith v Xi Yang, 106 AD3d 765 [2d Dept 2013]; Alderman v Alderman, 78 AD3d 621 [2d Dept 2010] .) In this respect, this court notes that the wife nowhere asks to vacate the entire judgment of divorce. The wife does not contest that the husband is entitled to “reasonable access.” She only disputes whether the refined terms of the interim judgment of divorce—the “liberal and unsupervised” access provided for in the interim judgment—should control. Modification of an existing custody arrangement is permissible only upon a showing that there has been a change in circumstances such that modification is necessary to ensure the best interests of the children. (.Matter of Chery v Richardson, 88 AD3d 788 [2d Dept 2011] .) In this court’s view, the wife has failed to produce evidence of a change in circumstances. There is no evidence that *990 anything has changed since the date of the final judgment of divorce in Singapore. The children reside with the mother and the father does not seek to change the residence or the custody relationship. The only change that has occurred since the date of the interim judgment is that the father has actually attempted to engage in visitation with his children. This supposed “change” was always anticipated. The wife admits she agreed to give the father at least “reasonable access” in the documents she reviewed and signed in Singapore and must have known, because the father lived halfway around the world, that it would involve visits to Rochester and time with his children.
The wife also has only a meager argument that the terms of the interim judgment, with respect to the father’s visitation with the children, are unfair or unjust. The interim judgment gives the wife primary residence of the children and allowed her to relocate to the United States. Although the husband and his entire family lived in Singapore and the family had virtually always resided there, the husband made a substantial concession: he permitted his wife to take their children and relocate to the United States. In exchange, he sought what can only be described—as it is in the text of the agreement—as “liberal visitation,” including “unsupervised access including overnights, reasonable periods of access during their school holidays and reasonable internet/skype access.” The Singapore judgment did not specify when the actual visits would occur and did not detail the actual times, as agreements in New York often favor. But, the clear intention of the agreement was to permit the father, by giving notice of at least two weeks to the mother, to have a right to spend significant time alone with his children. This portion of the agreement is eminently reasonable and fair. Many New York courts, faced with a parent seeking visitation over long distances, have favored similar visitation plans. (See Matter of Aguirre v Romano, 73 AD3d 912, 914 [2d Dept 2010] [holding that a five year old could have summer vacation in another state and overnight stays in New York to create “frequent and meaningful visitation” for the parent]; Matter of Cole v Reynolds, 110 AD3d 1273 [3d Dept 2013] [in a relocation case, the court approved an expansion of the child’s time with her mother and half siblings; it expanded the existing schedule by awarding time during Thanksgiving or Christmas in alternating years, one week during spring recess, three weeks in August, and regularly scheduled weekly 30-minute Skype or telephone calls between the child, her mother and her half siblings, with *991 the father incurring all transportation costs]; Thompson v Smith, 277 AD2d 520 [3d Dept 2000] [requiring a parent to pay air travel costs for the child to be with the parent on numerous extended weekend visits throughout the year in addition to extended summer and holiday visits, and the provision for additional optional visitation for one weekend per month was sufficient for a parent to maintain a close relationship with the child]; Matter of Smith v Hoover, 24 AD3d 1096 [3d Dept 2005] [it was proper for Family Court to give weight to the impact of the relocation on visitation; its concerns were adequately met by petitioner’s offer to make the child available for visitation whenever respondent could come to North Carolina, bring the child to New York at Christmas and during summers, and work with respondent to share transportation responsibilities]; Satalino v Satalino, 273 AD2d 632 [3d Dept 2000] [visitation plan including every third weekend, two weeks in the summer and additional visits—including shared holidays—as agreed upon between the parties with the expense and responsibility for all transportation was to be borne by distant parent].) As these cases demonstrate, New York courts, in fashioning “reasonable access” for parents who live a long distance from their children, have imposed visitation plans very similar to those imposed by the Singapore court in this case.
One final factor must be evaluated: any visitation decision—or even the confirmation of the Singapore interim judgment in this case—must be premised on the best interests of the children. (Eschbach v Eschbach, 56 NY2d 167 [1982].) At this stage this court cannot, with confidence, make any determination regarding the best interests of these two children. However, New York courts repeatedly note that a child’s best interest requires bonding time with both parents. (R.F.R. v D.A.R., NYLJ, Sept. 18, 2006, 2006 NY Misc LEXIS 2616 [Sup Ct, Suffolk County 2006]; Matter of Suzanne T. v Arthur L.T., 12 Misc 3d 691 [Fam Ct, Monroe County 2005] [children benefit from substantial time with both parents].) There is no evidence in the papers before the court that suggests that the children’s visitation with their father has had any adverse impact on them. There is no evidence in the wife’s affidavit in support of the cross motion of any emotional turmoil or displacement caused by the children seeing their father. The wife claims to be “fearful” of her children’s well-being and safety when they are with their father, but, there is no evidence of any harm to the children since visitation began. There is no evidence of any violent *992 actions or language directed against the children at any time. She claims that the children have cried when their father loses his temper, but there are no specific incidents related since the children moved to New York, and because the wife has always been present when the father has had visitation, this court can only conclude that none have occurred. There is no evidence to suggest that the best interests of the children would not be served by their father’s presence in their lives, and there is no change of circumstance sufficient to justify a modification of the visitation plan in the Singapore interim judgment.
Finally, the wife seeks a change from joint to sole custody. She must prove a “sufficient change in circumstances demonstrating a real need for a change of custody in order to insure the child’s best interests.” (Matter of Dorsa v Dorsa, 90 AD3d 1046, 1046 [2d Dept 2011].) There is no evidence to support such a change; the husband has expressed his desire to see his children consistent with the Singapore judgment of divorce. The husband’s lifestyle has not changed and there is no such allegation. The only allegation of any change is that the husband, after being told by his ex-wife that she would not allow the children to stay overnight with him—even though the judgment of divorce expressly permitted such overnights—told his wife that he would only negotiate through his attorney. The husband’s resort to legal intervention—when the wife directly refused to comply with the judgment—does not equate with a substantial change in circumstances sufficient to justify a change in custody. There is also no evidence that these parents are so antagonistic that they are unable to communicate or cooperate on matters concerning the children. (Matter of Flores v Mark, 107 AD3d 796 [2d Dept 2013].) The mother and father have communicated during the father’s prior visitation. The mother acknowledges that prior to April 2014, she communicated with the father when he came to Rochester. The communication broke down when the mother declined to permit the father to have the access set forth in the interim judgment. In this court’s view, the father’s assertion of his rights under the interim judgment does not constitute a change in circumstances sufficient to change this case from joint custody to sole custody.
In short, the wife has not met the test for modifying the visitation provisions in the interim judgment of divorce. Examined under any reasonable prism, the terms of the father’s access are reasonable and fair and, as described above, not incompatible with terms that a New York court would consider reasonable *993 under similar circumstances. Based on all of these factors, the wife’s motion to vacate the Singapore judgment of divorce, or its visitation provisions, is denied.
The Father’s Request for a Bond and Attorneys Fees
Two other requests from the father command attention. The father asks the wife to post a bond to secure her compliance with the interim divorce decree and calculates the bond amount as the equivalent of one year of child support and maintenance. The father would suspend these payments as a form of security for the wife’s compliance with the Singapore judgment. This court declines to suspend the children’s right to support, to punish the wife for her contempt, and believes that such a suspension would violate New York public policy. This court declines to require the wife to post any bond. This court has jurisdiction over the wife, found her in contempt, and permitted her to purge the contempt. If the wife fails to comply with the proposed path to purge her contempt, this court has ample other sanctions—fines, incarceration, and a change in custody, and primary residence to the father—that can achieve her compliance. Finally, the husband’s claim for attorneys fees under section 238 of the Domestic Relations Law is denied because of lack of compliance with 22 NYCRR 202.16 (k) (2). In this court’s view, the wording of a “previously granted order or decree” as used in this section would only apply to a New York order or decree and not an order or decree of a foreign state. (Id.) The Singapore judgment makes no suggestion that fees for enforcement are permitted by its terms and the father makes no claim that the laws of Singapore would permit an award of legal fees to enforce its judgment. The claim for fees under the Domestic Relations Law are denied. The claim for fees under section 773 of the Judiciary Law stands on a slightly different ground, as fees are authorized by statute without the regulatory requirement of an accompanying statement of net worth. The attorney fees provisions of UCCJEA are also broad. (Domestic Relations Law § 77-k.) The court has reviewed the fees submitted by counsel and, in view of the fact that any fee award against the wife might jeopardize the funds available for the children, awards $6,000 in legal fees to be paid over the course of the next six months.
In conclusion:
1. the Singapore judgment and its custody order are recognized and registered pursuant to section 77-d of the Domestic Relations Law;
*994 2. the wife is in contempt for violation of the terms of the Singapore judgment, but permitted to purge that contempt through a series of actions to accommodate the father’s rights under the agreement and to make him whole for the wife’s failure to abide by the terms of the interim judgment;
3. the father’s request for a bond to be posted by the wife is denied;
4. the father is awarded $6,000 in attorneys fees;
5. the wife’s motion to vacate the Singapore judgment is denied; and,
6. to the extent that the wife’s application seeks to modify the Singapore judgment and change the visitation provisions, her application is denied.

. The writ states that an “acknowledgment of service” was included among the documents delivered to the wife. However, while all the other pleadings in the Singapore divorce action are before the court, there is no acknowledgment of service. Presumably this would be proof that the wife was served with, or admitted receipt, of these documents, including the proposed parenting plan.

. The writ also provided that the husband will pay “reasonable maintenance” to the wife and provide “reasonable maintenance” for the two children. In the interim judgment of divorce, the court transformed these “reasonable maintenance” provisions into exact monthly sums: $1,250 in child support for each child, and $1,000 as spousal maintenance. In addition, even though there is no mention in the writ or the “proposed parenting plan” of the education or health care costs for the children, the interim judgment of divorce provides that the father shall pay such costs until age 21, or when they achieve their first university degree, whichever is later. The wife does not challenge the transformation of the general phrase of “reasonable maintenance” as described in the writ into the specific dollar amounts set forth in the interim judgment.

. It is undisputed that the wife had left Singapore nearly three weeks earlier.

. The wife cites no authority for this allegation and never suggests any specific behavior that would be evidence of bipolar disorder. This wild allegation does little to give the court confidence in the wife’s credibility and judgment. The husband also makes an unsubstantiated claim that the wife suffered from depression and declined treatment. Likewise, these allegations do little to buttress the husband’s version of events and, when analyzed side-by-side suggest that the parties are more interested in tar and feathering each other, than acting in the best interests of the children.

. In fact, the Singapore procedural rules bear a striking resemblance to the rules in New York’s CPLR. The rules in Singapore, as used in this case, require a complaint (the writ of divorce), service of the writ, an opportunity to dispute the allegations in the writ (comparable to the answer required by *981 CPLR 320 [a]), a specific opportunity to proffer an alternate parenting plan, presentation of an interim judgment, a right to contest the interim judgment for three months thereafter, and, in the absence of objection, the conversion to a final judgment. These options seem, at least to this court, to accord the wife, as a defendant, all the necessary due process protections that exist in New York.

. The mere fact that the country’s family law jurisprudence may be different from New York’s does not equate with the conclusion that the foreign state’s rules violate a party’s “fundamental . . . human rights.” (Matter of Serihy M. v Olena O.M., 33 Misc 3d 1223[A], 2011 NY Slip Op 52081[U], *3 [Fam Ct, Kings County 2011] [applying Ukraine law and concluding that the Ukraine procedure did not violate fundamental principles of human rights].)

. Whether the insertion of the specific terms of visitation without a hearing or the wife’s consent is expressly permitted by Singapore law or just a principle applied by the Singapore court in this instance is irrelevant, as the statute expressly states that the UCCJEA applies to either the written law or the law “as applied.” (Domestic Relations Law § 75-d [3].)

. There would be no need for any written parental consent if the terms of the visitation were imposed by a court after a hearing or other appropriate legal process.

. There is no evidence that the father has failed to pay these costs and expenses even during the pendency of court proceedings involving this dispute.

. The statute requires the party subject to the order to “have submitted to the jurisdiction of the [foreign] court.” (Domestic Relations Law § 75-e.) The wife, by signing the consent to judgment, clearly submitted to the jurisdiction of the Singapore courts.

. Importantly, this court notes that the wife nowhere suggests, either in her affidavit in support of the cross motion, or her reply affidavit, that she made any attempt to contact her own family and seek personal or legal advice. There is no evidence that she sought assistance from her own family at any critical time during the fall of 2011, when she was undergoing the divorce and presented with the parenting plan agreement in Singapore.

. The father also claims that the mother engaged in contempt by failing to provide him with sufficient access through Skype and other electronic communications. The wife disputes these claims and, therefore, the court cannot make any finding that these breaches of the wife’s obligations under the judgment are sufficient to justify a finding of contempt without a hearing.