NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Derry Family Division
No. 2021-0234

IN THE MATTER OF SENAY AKIN AND NEDIM SULJEVIC

Argued: November 18, 2021
Opinion Issued: January 13, 2022

Bloomenthal Law Office, of Nashua (Sandra Bloomenthal on the brief and orally), for the petitioner.

Ropes & Gray LLP, of Boston, Massachusetts (Daniel V. Ward, Erin Macgowan, and Elias R. Feldman on the brief, and Daniel V. Ward orally), and Preti, Flaherty, Beliveau & Pachios, Chartered, LLP, of Concord (William C. Saturley on the brief), for the respondent.

HICKS, J.  The respondent, Nedim Suljevic (Father), appeals an order of the Circuit Court (Steckowych, J.) denying his motion for the court to exercise temporary emergency jurisdiction over the parties' custody dispute pursuant to New Hampshire's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), see RSA ch. 458-A (2018), and granting the petition of the petitioner, Senay Akin (Mother), to enforce the parties' Turkish child custody order.  We affirm.

I.  Factual Background

    The following facts were found by the trial court, relate the content of documents in the record, or are undisputed.  The parties, who both currently have or previously had Turkish citizenship, were married in December 2010 and had a daughter the following year.  According to Mother, the parties married in New Hampshire, and when she was pregnant with their daughter, she moved to Turkey while Father continued to reside in the United States.

    The parties' daughter was born in Turkey in December 2011 and, until the events giving rise to this proceeding occurred in 2019, lived in Turkey continuously, attending school and receiving medical care there.  According to Mother, before the parties divorced, she traveled to the United States "once or twice every year so that [the daughter] could see [Father] and continue their bond," and Father "came to Turkey once or twice every year to visit [the] daughter."

    The parties were divorced by a Turkish court in January 2015.  The decree grants Mother sole custody of the child and allows Father to have visitation with her.  In 2019, Mother agreed that the daughter could spend July and August in the United States, visiting Father.  However, at the end of this planned, two-month visit, Father refused to return the daughter to Mother.  Mother made repeated overtures to Father for the daughter's return, but he refused her entreaties.  Mother accepted employment in Massachusetts during the 2020-2021 timeframe so that she could visit the daughter.  During this time, Father continually rejected Mother's requests for the daughter's return to her custody.

    Because of the COVID-19 pandemic and difficulty finding a suitable attorney, Mother did not bring a court action for the daughter's return until filing the instant petition for expedited enforcement of a foreign child custody order in April 2021.  Father was served with Mother's petition on May 3, 2021.  The next day, he filed a motion asking the trial court to exercise temporary emergency jurisdiction over the custody dispute pursuant to the UCCJEA on the ground that the daughter "is present in [New Hampshire] and is threatened with mistreatment or abuse if she is consigned to the custody of [Mother]."  Father submitted an affidavit in which he averred that before the daughter "came to stay with [him] in New Hampshire, [he] made frequent visits to Turkey to see her and [Mother]," and that "[o]n two occasions, [he] personally saw [Mother] kick [the daughter] with force, like a soccer ball."

    Mother objected to Father's motion, asserting that he had "refused repeatedly to return [her] daughter" and had issued threats.  Mother contended that Father had harmed the daughter by refusing to allow her to be with

2

Mother and Mother's family in Turkey. Mother asserted that Father "should not be allowed to litigate in New Hampshire when the Turkish order controls custody."

Following a hearing on offers of proof and documentary evidence, the trial court denied Father's motion for emergency jurisdiction and granted Mother's petition for enforcement of the Turkish child custody order, returning the daughter to Mother's sole custody. This appeal followed.

II. Analysis

We will uphold the trial court's factual findings unless the evidence does not support them or they are erroneous as a matter of law. Rabbia v. Rocha, 162 N.H. 734, 738 (2011). We review the trial court's legal rulings and its application of law to the facts de novo. Balzotti Global Grp., LLC v. Shepherds Hill Proponents, LLC, 173 N.H. 314, 319 (2020).

Mother brought this petition under both the UCCJEA and the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter, Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 98, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986), as implemented by the International Child Abduction Remedies Act (ICARA), see 22 U.S.C. §§ 9001-9011 (2018). We first consider Father's arguments regarding the Hague Convention.

A. The Hague Convention

The Hague Convention, to which the United States and Turkey are parties, see Ozaltin v. Ozaltin, 708 F.3d 355, 358 (2d Cir. 2013), "was adopted in 1980 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'" Gitter v. Gitter, 396 F.3d 124, 129 (2d Cir. 2005) (quoting Hague Convention, Preamble, supra, 1343 U.N.T.S. at 98, reprinted in Fed. Reg. at 10,498). The United States ratified the Hague Convention in 1988, and Congress implemented the Convention that same year through the ICARA. Lozano v. Montoya Alvarez, 572 U.S. 1, 6 (2014). The ICARA allows a parent to petition a federal or a state court to return an abducted or wrongfully retained child to the child's country of residence. See 22 U.S.C. § 9003(b).

"The Hague Convention applies only to determine whether a child should be returned, and does not empower the court to make any determinations regarding child custody." Avendano v. Balza, 985 F.3d 8, 11 (1st Cir. 2021)

(citation omitted). "The court simply asks whether a custody decision should be made in the United States or in the country of the child's habitual residence." Id.

"The Convention states two primary objectives: 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State,' and 'to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" Lozano, 572 U.S. at 4-5 (quoting the Hague Convention, art. 1). "To those ends, the Convention's central operating feature is the return of the child." Id. at 5 (quotation omitted). There is, thus, a "strong presumption of return of the child to his or her country of habitual residence." Avendano, 985 F.3d at 11. However, "[t]he Convention's return requirement is a provisional remedy" that merely "fixes the forum for custody proceedings." Monasky v. Taglieri, 140 S. Ct. 719, 723 (2020) (quotation omitted). "Upon the child's return, the custody adjudication will proceed in that forum." Id. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." Abbott v. Abbott, 560 U.S. 1, 20 (2010).

The Convention "stresses the importance of deciding matters expeditiously," Ermini v. Vittori, 758 F.3d 153, 167 (2d Cir. 2014) (quotation omitted), and the need to establish "swiftly a degree of certainty and finality for children," id. at 168. "To avoid delaying the custody proceeding, the Convention instructs contracting states to use the most expeditious procedures available to return the child to her habitual residence." Monasky, 140 S. Ct. at 724 (quotation omitted).

A parent, like Mother in this case, alleging wrongful retention has the burden of establishing a prima facie case of wrongful retention by a preponderance of the evidence. See 22 U.S.C. § 9003(e)(1). A retention is wrongful when: "(1) the child was habitually resident in one State and has been . . . retained in a different State; (2) the . . . retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the . . . retention." Gitter v. Gitter, 396 F.3d 124, 130-31 (2d Cir. 2005). Here, Father does not argue that Mother failed to establish her prima facie case.

Once the petitioning parent establishes her prima facie case, the child must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." Lozano, 572 U.S. at 6 (quotation omitted); see 22 U.S.C. § 9001(a)(4). Father invokes the exception contained in Article 12 of the Convention. Under that article, when, as in this case, more than one year has elapsed between the date that the child was wrongfully retained and the date on which the proceedings commenced, the court must order the child to be returned "unless it is demonstrated that the child is now settled in [her] new

environment." Hague Convention art. 12, supra, 1343 U.N.T.S. at 100, reprinted in 51 Fed. Reg. at 10,499.

Father argues that the trial court erred by declining to consider whether the child was now settled in New Hampshire. We do not share his interpretation of the trial court's decision as reflected in its narrative order and order from the bench. In the Matter of Sheys & Blackburn, 168 N.H. 35, 39 (2015) ("The interpretation of a court order is a question of law, which we review de novo."). Rather, we interpret the trial court's narrative and bench orders as the trial court assuming that the child was now settled in New Hampshire, and deciding that, nonetheless, return was still proper. As Father acknowledges, the trial court "accepted [his] argument that the child was 'now settled' in the community, but it was unwilling to allow this fact to change its analysis."

Even when a narrow exception under the Hague Convention applies, the court retains the discretion to return the child. Article 18 states that "[t]he provisions of this Chapter [Chapter III, which includes Article 12] do not limit the power of a judicial or administrative authority to order the return of the child at any time." Hague Convention art. 18, supra, 1343 U.N.T.S. at 101, reprinted in 51 Fed. Reg. at 10,500. Those federal circuit courts of appeal, "which have addressed the issue[,] have all held that this language, either standing alone or when read in conjunction with another provision (Article 12, for instance), grants courts the discretion to order the return of a child despite the existence of an exception to return." Fernandez v. Bailey, 909 F.3d 353, 362 (11th Cir. 2018) (citing cases). Thus, under Article 18 of the Hague Convention, the court may exercise its discretion and order the child's return, despite the existence of an exception, if doing so is in keeping with the Convention's goals. Id. at 362-63; see Lozano, 572 U.S. at 18-19 (Alito, J., concurring). "[I]f more than one year has passed, a demonstration that the child is now settled in its new environment may be a sufficient ground for refusing to order repatriation," but it does not compel that result. Blondin v. Dubois, 238 F.3d 153, 164 (2d Cir. 2001) (quotation and brackets omitted).

In his concurring opinion in Lozano, Justice Alito listed several factors that could outweigh the child's interest in remaining in her new environment, including the child's need for contact with the non-offending parent, the need to discourage inequitable conduct, and the need to deter international abductions. Lozano, 572 U.S. at 20 (Alito, J., concurring). We review the trial court's decision to order the child's return, despite her being settled in New Hampshire, under our unsustainable exercise of discretion standard. See State v. Lambert, 147 N.H. 295, 296 (2001); see also Fernandez, 909 F.3d at 363 (explaining that because a trial court "may exercise its discretion to order the return of a child notwithstanding finding that an exception to return is met, [the appellate court] review[s] the determination by the [trial] court to return or not to return a child for an abuse of discretion").

5

Father, however, does not argue that the trial court unsustainably exercised its discretion.  Rather, he argues that the trial court failed to exercise its discretion.  Because we have rejected his interpretation of the trial court's decision, we necessarily also reject his arguments premised upon that interpretation.

B.  UCCJEA

We now consider Father's arguments under the UCCJEA.  Father contends that the trial court's decision "is worthy of reversal on two grounds under the UCCJEA."  First, he asserts, the trial court unsustainably exercised its discretion in declining to exercise temporary emergency jurisdiction and in making its jurisdictional decision based upon offers of proof and documentary evidence, instead of an evidentiary hearing with witness testimony.  Second, he asserts that the trial court erred by enforcing the Turkish custody order "because it was too tarnished by procedural deficiency."

To resolve these issues, we must construe the UCCJEA.  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  In the Matter of Yaman & Yaman, 167 N.H. 82, 86 (2014).  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  When the language of a statute is unambiguous, we do not look beyond it for further indications of legislative intent.  Id.  "In addition to our ordinary rules of statutory construction, we may consider the official comments to the UCCJEA."  In re Guardianship of K.B., 172 N.H. 646, 649 (2019).

1.  Temporary Emergency Jurisdiction

Father argues that the trial court erred by declining to exercise temporary emergency jurisdiction over the parties' custody dispute.  The UCCJEA provides that a court may exercise temporary emergency jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."  RSA 458-A:15, I.

Father asserts that declining to exercise temporary emergency jurisdiction was error because "the only competent evidence" in the record compelled the finding that the daughter was "threatened with abuse or mistreatment in [Mother's] custody."  We disagree.

"The comments to the UCCJEA explain that the exercise of temporary emergency jurisdiction is intended to be narrowly circumscribed."  In the Matter of Yaman & Yaman, 167 N.H. at 98.  According to those comments,

6

temporary emergency jurisdiction is "an extraordinary jurisdiction reserved for extraordinary circumstances." Unif. Child Custody Jurisdiction & Enforcement Act § 204, cmt., 9-IA U.L.A. 518 (2019) (quotation omitted).

Here, although Father submitted an affidavit attesting that he had observed, on two occasions, Mother kick the daughter "with force, like a soccer ball," the trial court was not required to credit his affidavit. As the fact finder, the trial court was not required to believe even uncontroverted evidence. In the Matter of Henry & Henry, 163 N.H. 175, 181 (2012); see In the Matter of Yaman & Yaman, 167 N.H. at 96 ("[T]he court was not required to credit [the mother's] offers of proof (any more than it would have been required to credit [her] live testimony . . . ."). We defer to the trial court's decision not to credit Father's affidavit "unless no reasonable person could have come to the same conclusion." ACAS Acquisitions v. Hobert, 155 N.H. 381, 391 (2007).

The trial court's decision not to credit Father's affidavit was reasonable given that, as the trial court found and as the record demonstrates, Father took no action to have the Turkish custody order vacated or modified. Father acknowledges that he "did not seek to modify the custody order." However, he contends that there is no evidence that he failed to take action to have the order vacated. The trial court's factual finding is supported by the proffer by Mother's attorney, which included "a letter from the presiding judge [in Turkey] indicating the status of the matter."

The trial court's decision not to credit Father's affidavit was also reasonable given the undisputed evidence that, despite his alleged concerns, he continued to allow Mother to visit the daughter. Father concedes that Mother visited the daughter "in New Hampshire on numerous occasions." Indeed, according to Father's attorney, Father expected Mother to "spend time with and be with the daughter" in New Hampshire in May or June 2021. Absent credible evidence demonstrating that the daughter was threatened with mistreatment or abuse in Mother's custody, we conclude that the trial court did not err by declining to exercise temporary emergency jurisdiction.

Father next asserts that the trial court erred by declining to exercise emergency jurisdiction over the custody dispute because the court decided the matter on offers of proof and documentary evidence, instead of by conducting an evidentiary hearing with witness testimony. However, he cites no controlling authority requiring a trial court to conduct an evidentiary hearing with witness testimony. Nothing in the UCCJEA requires the court to hold such an evidentiary hearing to decide whether it had temporary emergency jurisdiction. Nor is there a court rule compelling the circuit court to hold an evidentiary hearing. Indeed, the rules governing circuit court family division cases expressly grant the court discretion to "receive evidence by offers of proof." Fam. Div. R. 1.28(B).

Relying upon In re Aiden L., 224 Cal. Rptr. 3d 400 (Ct. App. 2017), and University of Texas v. Poindexter, 306 S.W.3d 798 (Tex. App. 2009), Father asserts that it was "critical" for the court to hold an evidentiary hearing with witness testimony in this case "given the importance of subject matter jurisdiction" and "the dispositive role of jurisdictional facts." However, neither case stands for the proposition that a trial court lacks the discretion to decide whether it has temporary emergency jurisdiction based upon offers of proof.

In the absence of a statutory mandate or a court rule, "the court has discretion to determine whether a hearing is necessary." State v. Zhukovskyy, 174 N.H. 430, 435 (2021). Here, we cannot conclude that the trial court unsustainably exercised its discretion by deciding this matter on offers of proof and documentary evidence instead of by conducting a full-blown evidentiary hearing.

Father argues that his due process interests compelled the trial court to conduct an evidentiary hearing with witness testimony "on the question of whether to exercise temporary emergency jurisdiction." See U.S. CONST. amends. V, XIV. Because Father does not cite the State Constitution, we limit our analysis to the Federal Constitution. See State v. Dellorfano, 128 N.H. 628, 632-33 (1986).

The threshold issue in a procedural due process claim is whether there is a constitutionally protected interest at stake. See Mard v. Town of Amherst, 350 F.3d 184, 188 (1st Cir. 2003). If such an interest is at stake, we then determine whether the procedure at issue afforded the requisite safeguards, mindful that "[t]he requirements of due process are flexible and call for such procedural protections as the particular situation demands." Appeal of Nguyen, 170 N.H. 238, 243, 244 (2017) (quotation omitted); see Mathews v. Eldridge, 424 U.S. 319, 334 (1976). Procedural due process requires that parties whose rights are affected have the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews, 424 U.S. at 333. "The ultimate standard for judging a due process claim is the notion of fundamental fairness." State v. Veale, 158 N.H. 632, 637 (2009) (quotation omitted).

"[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests" recognized by the Supreme Court. Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion). The record on appeal demonstrates that Father received actual notice of Mother's petition for expedited enforcement of the Turkish child custody order to which he responded by filing a motion for the court to exercise temporary emergency jurisdiction over the parties' custody dispute. The record also establishes that the court held an in-person hearing on Mother's petition and Father's motion. Father's attorneys attended the hearing, and submitted offers of proof and argument on his behalf.

8

These procedures afforded Father an opportunity to be heard at a meaningful time and in a meaningful manner. Mathews, 424 U.S. at 333. We conclude, therefore, that his federal constitutional right to due process was not violated.

### 2. Enforcement of Turkish Custody Order

Under the UCCJEA, New Hampshire must "recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter." RSA 458-A:24, I. With the exception discussed below, the provisions of the UCCJEA apply not only to custody determinations made by courts of New Hampshire's sister states within the United States, but also to custody determinations rendered by courts of foreign countries. In the Matter of Yaman & Yaman, 167 N.H. at 88; see RSA 458-A:4. The UCCJEA does not require reciprocity; an order from a foreign court may be enforced even if that state or country has not adopted the UCCJEA or an equivalent statute. In the Matter of Yaman & Yaman, 167 N.H. at 88. Although RSA 458-A:24, I, requires the courts of this state to enforce a child custody determination made by a court of another state if the other state exercised jurisdiction in substantial conformity with the UCCJEA, the UCCJEA does not apply to custody determinations "made without notice or an opportunity to be heard." RSA 458-A:16, II.

Father implies that the trial court should not have enforced the Turkish court order because the parties constructively modified it when Mother purportedly agreed that he could have physical custody of the daughter for the last two years. However, an extrajudicial agreement of parties to a child custody order is not enforceable under the UCCJEA. Rather, a "modification" within the meaning of the UCCJEA refers to "a judgment, decree, or other order of a court," RSA 458-A:1, III, which "changes, replaces, supersedes, or is otherwise made after" an initial child custody court order, RSA 458-A:1, XI. Here, there is no evidence that the Turkish court issued a modified child custody order.

Next, Father asserts that the trial court erred by enforcing the Turkish custody order because he lacked an opportunity to be heard in the Turkish proceedings. We disagree.

"Neither the UCCJEA itself, nor its official comments, define 'opportunity to be heard.'" In the Matter of Yaman & Yaman, 167 N.H. at 90. When, as in this case, we are considering whether a court in a foreign country afforded a party an "opportunity to be heard" within the meaning of the UCCJEA, we do not apply "American standards of due process." Id. "Rather, the 'opportunity

9

to be heard' analysis is flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the proceeding in the foreign court." Id. (quotation omitted). "The question of whether a party had notice and an opportunity to be heard within the meaning of [the UCCJEA] should be interpreted as requiring that the party had a full and fair opportunity to be heard before an impartial tribunal that conducted the proceedings in a regular fashion." Id. (quotations omitted).

Here, the Turkish divorce decree, dated January 22, 2015, as translated into English, states that, on January 19, 2015, the parties appeared at a "public hearing," "declared to [the] court" that they had "agreed regarding the financial outcomes of the divorce and drafted a protocol on this matter," and had presented the protocol to the court for its approval. The order states that the court concluded that the parties' marriage was "broken," only after assessing their claim, "the personal family record, the amicable settlement which [had] been provided to the court and all evidence[]." The order further states that "the parties declared during the hearing with their free will that they have been agreed concerning the divorce and the financial outcomes of the divorce." The order states that "due to the reasons stated above," the court grants custody of the parties' daughter to Mother, with "personal contact between the father and the child" to take place according to a certain schedule. (Capitalization omitted.) The order requires Father to pay monthly child support to Mother in a certain amount and states that "[t]he parties have been informed directly, that they are entitled to file an appeal [with the Turkish Supreme Court] within 15 days upon receipt of the decision." The order does not indicate that either party was represented by an attorney at the hearing. A further order, issued on February 23, 2015, states that the parties' divorce decree was certified as final on February 18, 2015, "due to the 'petition about their waive[r] from an appeal.'"

On this record, we conclude that Father had an opportunity to be heard in the Turkish proceedings as to the custody issue. Father acknowledges that the parties "went to court on a consensual divorce" as reflected in the Turkish divorce decree. He further acknowledges that he signed the relevant documents in the Turkish divorce and that one of those documents stated that he consented to the award of custody to Mother. The decree establishes that he declared, in a public hearing, that he agreed to the divorce and its financial consequences "with [his] free will." The parties' agreement was reviewed and approved by the Turkish court. Father does not dispute that he was informed of his right to appeal the decree and that if he failed to do so, the decree would become final within 15 days of his receipt of it. Nor does he dispute that, thereafter, he waived his right to appeal.

In concluding that the uncontested Turkish divorce proceedings provided Father an "opportunity to be heard" within the meaning of the UCCJEA, we find Chue v. Clark, 999 N.Y.S.2d 676 (Sup. Ct. 2014), instructive. In that case,

10

the wife argued that she had not been given an "opportunity to be heard" on the visitation issues before the Singapore court "because while she signed the consent to judgment, she never signed any agreement containing the specific terms of visitation." Chue, 999 N.Y.S.2d at 686 (quotation omitted). The New York court rejected her argument, noting that she had been extended the "opportunity to be heard" because the interim judgment included a pronouncement that unless sufficient cause was shown, the judgment, which allowed the husband to have "liberal unsupervised visitation," would become final in three months. Id. (quotation omitted). The wife did not dispute that she received the interim judgment and made no claim that she had been unable to dispute its contents. Id. Under these circumstances, the court concluded that she had been extended the opportunity to be heard on the extent of the husband's visitation rights and had declined it. Id.

Similarly here, Father concedes that he signed the pertinent Turkish divorce documents consenting to the award of custody to Mother. He does not dispute that he appeared in court and that he was informed of his right to appeal the divorce decree. Nor does he claim that he was unable to file such an appeal. Under these circumstances, we conclude that Father was extended an opportunity to be heard as to the custody of the parties' child, and declined that opportunity. See id.

Father contends that he lacked an "opportunity to be heard" in the Turkish proceedings because he represented himself and the divorce was uncontested. We decline to hold that merely because Father was self-represented and the parties' divorce was uncontested, he lacked an "opportunity to be heard" within the meaning of the UCCJEA. Accordingly, we conclude that the trial court did not err by enforcing the Turkish child custody order. We have reviewed Father's remaining arguments related to the UCCJEA and conclude that they lack merit and warrant no extended consideration. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

III. Conclusion

For all of the above reasons, we uphold the trial court's decision to deny Father's request that the court exercise temporary emergency jurisdiction over the parties' custody dispute and to grant Mother's petition to enforce the parties' Turkish child custody order.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

11