■ In the Matter of JARREN S., Respondent, v SHAMING T., Appellant. (And Another Related Proceeding.) [984 NYS2d 484]—

Peters, P.J. Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered September 26, 2012, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a daughter (born in 2002). The child resided with the mother in the City of Troy, Rensselaer County, while the father lived primarily in Westchester County. In February 2012, after the child reported to the father that she had been hit by the mother, the father commenced this proceeding seeking custody of the child. Following

a fact-finding hearing, Family Court awarded sole legal and primary physical custody to the father and provided the mother with parenting time on alternate weekends, two nonconsecutive weeks during the summer, and such additional periods of time as the parties may agree. The mother appeals.

"An initial custody determination is controlled by the best interests of the child, taking into consideration such factors as the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (*Matter of Keen v Stephens*, 114 AD3d 1029, 1030 [2014] [internal quotation marks and citations omitted]; *see Bowman v Engelhart*, 112 AD3d 1187, 1187 [2013]; *Matter of Adams v Morris*, 111 AD3d 1069, 1069-1070 [2013]). In reviewing such determination, we accord great deference to Family Court's credibility assessments and factual findings, and will not disturb its determination if supported by a sound and substantial basis in the record (*see Matter of Keen v Stephens*, 114 AD3d at 1030; *Matter of Roberta GG. v Leon HH.*, 99 AD3d 1057, 1059 [2012]).

Here, we find ample support in the record for Family Court's custody determination. Of particular concern were reports of corporal punishment expressed by the child in a January 2012 text to the father and statements both to the father and his family. When questioned, the mother openly admitted that on multiple occasions she had spanked the child with a belt as a form of discipline. The child's maternal grandmother testified to having witnessed such discipline, explaining that the mother "whips" the child's unclothed buttocks with a belt. The child feared the mother as a result, and members of the father's family testified that the child would often cry when it was time to return to the mother's residence. On at least one occasion, the child hid in the father's home in an attempt not to return. Testimony also revealed that the mother frequently used profanity toward the child.

Moreover, the mother exercised poor judgment and engaged in inappropriate, and even bizarre, behavior. For example, she would place phone calls to the father as early as 2:30 or 3:30 a.m. seeking to speak with the child. On one occasion, with knowledge that the father had not consented to such an arrangement, the mother left the City of Albany in the early morning hours and arrived at the father's residence—approximately 2½ hours away—with her mother and young son sometime after 5:00 a.m. to pick the child up from a visit. Although there was no court order allowing for the mother to take the child at

that hour, she refused to leave without the child and police intervention was required. The father testified further that, following a court appearance, the mother threatened to assault him and his family.

There was also evidence that the mother actively interfered with the father's relationship with the child. She prohibited the child from speaking with the father for the nearly two-month period preceding the first court appearance in late February 2012. In addition, the mother sent the child to stay with family in North Carolina—during the pendency of this proceeding— without informing the father, and even concealed this fact from the father during the many times he called to speak with the child. Consequently, at the time of the fact-finding hearing, a month had passed since the father last had contact with the child. Moreover, the mother blocked the father from accessing the child's academic and medical records and did not consult with him about health issues. Indeed, despite a February 2012 court order compelling her to do so, the mother waited until May 2012 to add the father to the child's school records.

While the mother has been the child's primary caregiver since birth and the father only recently began to take a more active role in her upbringing, there is nothing in the record to indicate that the father is not equally capable of providing for the child's needs. He currently serves as a sergeant in the Army Reserves, is gainfully employed and working towards obtaining a Bachelor's degree, and resides with his wife in his parents' four-bedroom household. Family Court found that, with the support system provided by his wife and mother, the father is more able to provide a stable home environment for the child. Moreover, the father encourages communication between the child and the mother when she is in his care, and has demonstrated a willingness to foster a relationship between the two. Considering all of the relevant facts and according appropriate deference to Family Court's credibility assessments, a sound and substantial basis exists in the record to support the award of primary physical custody to the father (*see Matter of McLaughlin v Phillips*, 110 AD3d 1184, 1186 [2013]; *Matter of Batchelder v BonHotel*, 106 AD3d 1395, 1398 [2013]; *Matter of Boulerice v Heaney*, 45 AD3d 1217, 1218 [2007]). Furthermore, given the evidence of, among other things, the mother's history of withholding information from the father, her consistent attempts to block the father's access to the child, as well as the parties' demonstrated difficulties in communication, we disagree with the mother's assertion that Family Court should have granted joint legal custody to the parties (*see Matter of Danielle TT. v Michael UU.*,

90 AD3d 1103, 1104 n [2011]; *Matter of Martin v Martin*, 45 AD3d 1244, 1245-1246 [2007]; *Matter of Scialdo v Kernan*, 14 AD3d 813, 814-815 [2005]).

Stein, Rose and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.