Matter of Paul JJ. v Heather JJ. (2020 NY Slip Op 03434)





Matter of Paul JJ. v Heather JJ.


2020 NY Slip Op 03434


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

527575 525576 528724

[*1]In the Matter of Paul JJ., Appellant,
v
Heather JJ., Respondent. (And Two Other Related Proceedings.)

Calendar Date: May 21, 2020

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Colangelo, JJ. 


Paul JJ., Springfield, Virginia, appellant pro se.
John A. Cirando, Syracuse, for respondent.
J. Mark McQuerrey, Cambridge, attorney for the child.



Per Curiam.
Appeals from three orders of the Family Court of Washington County (Meyer, J.), entered July 5, 2018, July 17, 2018 and February 28, 2019, which dismissed petitioner's applications, in three proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of three sons, all of whom have attained the age of majority, and one daughter (born in 2002; hereinafter the child). In June 2007, a Connecticut court issued a judgment of divorce (hereinafter the 2007 judgment) which, among other things, awarded the mother sole custody and ordered that the father "shall have no visitation with the minor children, except at the discretion of the [mother] and initiated only by the [mother]." In December 2016, the mother and the child relocated from Connecticut to New York. In June 2017, the father, who lives in Virginia, registered the 2007 judgment in New York (see Domestic Relations Law § 77-d). At that time, the Connecticut court relinquished jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A [hereinafter UCCJEA]; see generally Domestic Relations Law §
76-b [1]).
In March 2018, the father commenced the first of these three proceedings, seeking to modify the 2007 judgment.[FN1] Specifically, the father sought joint legal and physical custody of the child, with visitation at his discretion, "absent interference by [the] mother." Following a fact-finding hearing at which the father did not appear, but at which the mother testified, Family Court determined that the father failed to demonstrate the requisite change in circumstances and, pursuant to a July 5, 2018 order, the court dismissed the father's petition. On July 12, 2018, the father commenced the second of these proceedings, again seeking to modify the 2007 judgment by awarding him joint legal and physical custody of the child. Pursuant to a July 17, 2018 order, Family Court dismissed the father's petition, finding that it was generally duplicative of the prior petition. In October 2018, the father commenced the third of these proceedings, seeking the same relief as the prior two petitions. Following an appearance,[FN2] the court dismissed the father's petition in a February 28, 2019 order. The father appeals from the July 5, 2018, July 17, 2018 and February 28, 2019 orders.
Initially, the mother argues that the father's appeals should be dismissed because the father defaulted by failing to appear in court. She correctly asserts that a party cannot appeal from an order entered on default (see CPLR 5511; Matter of Nicole TT. v Rickie UU., 174 AD3d 1070, 1070 [2019]), but the orders on appeal here are not default orders. Although Family Court could have dismissed the first petition based solely on the father's failure to appear and prosecute it, the court denied the mother's motion on that ground and instead rendered its order on the merits. As the court did not issue a default order on any of these petitions, there is no basis to dismiss these appeals.
We reject the father's argument that the Attorney General "concedes the case" insofar as New York, along with other states, filed a federal action against the US government for "isolating children from their parents" (see State of Washington v United States of America, 2:18-CV-00939 [SD Cal 2018]). In that action, the Attorney General is challenging the federal government's policy that results in forcible separation of immigrant children from both of their parents at the border. That situation is easily distinguishable from the father's allegations that New York must disavow the delegation of judicial authority to a custodial parent to determine visitation with a noncustodial parent, notwithstanding that such delegation was contained in a valid out-of-state court order.
On the merits, a party seeking to modify an existing custody or visitation order bears the initial burden of demonstrating that a change in circumstances has occurred since the entry of that prior order that would warrant the court undertaking a best interests analysis; if that threshold showing is met, the party must then demonstrate that modification is necessary to ensure the child's best interests (see Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019], lvs denied 34 NY3d 905, 906 [2019]; Matter of Sue-Je F. v Alan G., 166 AD3d 1360, 1361 [2018]; Matter of LaBaff v Dennis, 160 AD3d 1096, 1096 [2018]). The father argues that he did not need to demonstrate a change in circumstances because he was, as a matter of law, entitled to modification insofar as the 2007 judgment does not comply with New York law; alternatively, he argues that the child's move to New York was, itself, a change in circumstances warranting modification because the law in New York is different from the law in other states.
Under New York law, unless visitation is inimical to the child's welfare, a court must create a parenting schedule that "results in frequent and regular access by the noncustodial parent," and the court cannot delegate to anyone — including a therapist, a parent or a child — its authority to determine visitation (Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [2019] [internal quotation marks and citation omitted], lv denied ___ NY3d ___ [June 9, 2020]; see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019]). If the 2007 judgment had been issued by a New York court, the visitation provision therein would be improper and would be stricken on an appeal therefrom. However, the 2007 judgment was not issued by a New York court, but by a Connecticut court. The father does not contend that the visitation provision of the 2007 judgment violated Connecticut law or was improper in that state.[FN3] The issue thus distills to whether a New York court is required, as a matter of law, to modify an out-of-state custody order that is valid under the other state's law but is not in conformance with New York law, or whether the party seeking a modification of such an order must adhere to the typical standard and demonstrate a change in circumstances before the court can modify the prior order.
To resolve this conundrum, we first turn to the UCCJEA. "A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA] . . . and the determination has not been modified" (Domestic Relations Law § 77-b [1]; see Matter of Adams v Clouse, 165 AD3d 1401, 1402 [2018]). Subject to exceptions not relevant here, a New York court must recognize and enforce a registered child custody order issued in another state, but may only modify such an order in accordance with title II of the UCCJEA, which includes Domestic Relations Law § 76-b (see Domestic Relations Law § 77-e [2]; 28 USC § 1738A). Thus, New York is required to recognize and enforce the 2007 judgment even though its visitation provision would have been improper if issued by a New York court. Nevertheless, it is not disputed that, pursuant to Domestic Relations Law § 76-b, Family Court had jurisdiction to modify the 2007 judgment, as the mother and the child had lived in New York for more than six months (making it the child's home state), the father did not live in Connecticut and the Connecticut court had relinquished jurisdiction pursuant to the UCCJEA.
The US Constitution's Full Faith and Credit Clause requires all courts to give full faith and credit to the judicial proceedings in every other state (see US Const, art IV, § 1).[FN4] When courts of this state uphold the validity of a foreign divorce decree, they must recognize all provisions of the decree, with exceptions for, among other things, the rare instance where a provision of the original decree violates the public policy of this state; in this context, public policy is not determined by reference to laws and court decisions alone, and "foreign judgments generally should be upheld unless enforcement would result in the recognition of a transaction which is inherently vicious, wicked or immoral, and shocking to the prevailing moral sense" (Greschler v Greschler, 51 NY2d 368, 377 [1980] [internal quotation marks, emphasis and citation omitted]; see Badawi v Alesawy, 135 AD3d 792, 793 [2016]; Chue v Clark, 46 Misc 3d 973, 983 [Sup Ct, Monroe County 2014]). Stated otherwise, the Full Faith and Credit Clause "does not require the application of another [s]tate's laws when they are 'obnoxious' to the forum [s]tate's policy" (Crair v Brookdale Hosp. Med. Ctr., Cornell Univ., 94 NY2d 524, 528 [2000]).
Although courts in our state cannot delegate authority to decide whether, or under what terms, a noncustodial parent may visit with his or her child, we do not deem an order containing such a delegation to be inherently vicious, wicked, shocking to our moral sense or obnoxious to this state's public policy such that we would refuse to honor the order or its provisions (see Chue v Clark, 46 Misc 3d at 984). Here, Family Court did not order an improper delegation of authority. Rather, Family Court simply declined to modify the 2007 judgment issued by a Connecticut court, which included a delegation of authority that was apparently proper in Connecticut but would not be proper if ordered by a New York court. Courts in this state will give full faith and credit to that judgment, and would be required to enforce it if asked to do so (see Domestic Relations Law §§ 77-b [1]; 77-e [2]).
Although the UCCJEA provides jurisdiction for New York courts to modify an out-of-state order, it does not prescribe the standard to be used in a modification proceeding. Instead, we must look to the substantive law of New York and adhere to the ordinary standard for modification of a custody and visitation order. Thus, to modify the 2007 judgment, the father was first required to demonstrate a change in circumstances since the entry of that judgment that would warrant undertaking a best interests analysis (see Braunstein v Braunstein, 114 AD2d 46, 56 [1985], lv dismissed 68 NY2d 753 [1986]; Chue v Clark, 46 Misc 3d at 989; cf. Matter of Taylor v Jackson, 95 AD3d 1604, 1605 [2012]). We agree with Family Court that he failed to do so. After the child moved from Connecticut to New York, she was approximately the same distance from the father in Virginia and had the same amount of contact with him that she had before the move. Thus, the move, alone, did not constitute a change in circumstances that would warrant the court undertaking a best interests analysis (compare Matter of Sue-Je F. v Alan G., 166 AD3d at 1361-1362; Matter of LaBaff v Dennis, 160 AD3d at 1096-1097), and the record does not support the other allegations in the father's petitions. Accordingly, as the father failed to meet his initial burden, the court did not err in dismissing his petitions.
Furthermore, contrary to the father's argument, Family Court did not violate its fiduciary obligation under Domestic Relations Law § 240 (1) (a). That statute provides that, to obtain "custody of or right to visitation with any child of a marriage, the court shall require verification of the status of any child of the marriage with respect to such child's custody and support, including any prior orders, and shall enter orders for custody and support as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child" (Domestic Relations Law § 240 [1] [a] [4]; see Family Ct Act § 651 [b]). The 2007 judgment required the father to pay specified child support to the mother. She testified that, sometime between 2007 and 2013, the father was incarcerated for failing to pay support. He acknowledged that he has not paid any child support since 2012. Yet, there is no indication in the record that the child's needs are not being met. Ironically, the father is complaining about the court's failure to address his own failure to properly support his child. Insofar as the court verified the status of the child through the evidence adduced at the fact-finding hearing and considered the support provisions of the 2007 judgment, along with the parties' history thereunder, Family Court satisfied its statutory obligation.
We reject as baseless the father's arguments that the mother's attorney and the attorney for the child engaged in misconduct. We have considered the parties' remaining
contentions and conclude that they are without merit.
Egan Jr., J.P., Lynch, Clark, Mulvey and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: The father had commenced other proceedings that were either withdrawn or dismissed.

Footnote 2: In its February 28, 2019 order, Family Court references a February 15, 2019 fact-finding hearing at which the father failed to appear. Family Court (Wait, J.) issued an order settling the record on appeal without including a transcript of this hearing.

Footnote 3: Indeed, in the father's direct appeal from the 2007 judgment, he addressed only its financial aspects and did not contest the propriety of the custody or visitation provisions.

Footnote 4: The father contends that, in People ex rel. Halvey v Halvey (330 US 610 [1947]), the Supreme Court of the United States held that custody orders are not subject to the Full Faith and Credit Clause. Contrary to this contention, in that case — decided long before the enactment of the UCCJEA, which was intended "to provide an effective mechanism to obtain and enforce orders of custody and visitation across state lines" (Domestic Relations Law § 75) — the Supreme Court recognized that, because custody orders are subject to modification, the forum state "has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the [s]tate where it was rendered" (People ex rel. Halvey v Halvey, 330 US at 615; see Schultz v Boy Scouts of Am., 65 NY2d 189, 204 [1985] [noting that the Full Faith and Credit Clause "requires the courts of each [s]tate to give to the judgments of other [s]tates the same conclusive effect between the parties as such judgments are given in the [s]tates in which they are rendered"]; Greschler v Greschler, 51 NY2d 368, 376 n 3 [1980]; Ho v McCarthy, 90 AD3d 710, 711 [2011]). The Supreme Court concluded that a New York court did not exceed the limits of Florida law when modifying a Florida judgment (see People ex rel. Halvey v Halvey, 330 US at 615). Thus, we disagree with the father's interpretation of that case and find the case inapplicable here.