Vickie F. v Joseph G. (2021 NY Slip Op 03488)





Vickie F. v Joseph G.


2021 NY Slip Op 03488


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

528312
[*1]Vickie F., Respondent,
v
Joseph G., Appellant.

Calendar Date:April 27, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

The Colwell Law Group LLC, Albany (Kevin M. Colwell of counsel), for appellant.
Jean M. Mahserjian Esq., PC, Halfmoon (Jennifer R. Morton of counsel), for respondent.
Christopher J. Obstarczyk, Latham, attorney for the child.
Nicole R. Rodgers, Saratoga Springs, attorney for the child.



Egan Jr., J.
Appeal from a judgment of the Supreme Court (Jensen, J.), entered May 15, 2019 in Saratoga County, granting, among other things, sole legal and physical custody of the parties' children to plaintiff, upon a decision of the court.
Plaintiff (hereinafter the mother) and defendant (hereinafter the father) were married in 2001 and are the parents two children (born in 2002 and 2004). In 2018, the mother commenced this action for divorce (see Domestic Relations Law § 170 [7]). Following joinder of issue, the father and the mother each moved for an order awarding them, among other things, temporary and exclusive possession of the marital home and temporary physical custody of the children. A three-day hearing ensued on the issue of temporary and exclusive possession of the marital residence and, in December 2018, Supreme Court granted the mother temporary exclusive use of the residence and further ordered, among other things, the parties to share temporary joint legal custody of the children with primary physical placement with the mother and parenting time to the father. The father appealed and, upon motion, this Court stayed those portions of the December 2018 order that, as relevant here, awarded temporary exclusive possession of the marital residence to the mother and granted the mother temporary physical custody of the children.[FN1] In April 2019, following a seven-day trial that included Lincoln hearings with both children, Supreme Court issued a decision granting the mother, among other things, sole legal and physical custody of the children, with specified parenting time to the father, and, pursuant to a stipulation of the parties, awarded the mother possession of the marital residence.[FN2] Supreme Court thereafter issued a judgment of divorce, which incorporated the terms of its April 2019 decision. The father appeals.[FN3]
Initially, we are unpersuaded by the father's contention that he was denied procedural due process by being denied a full and fair opportunity to present evidence at the pendente lite hearing and the subsequent trial. Generally speaking, "it is error as a matter of law to make an order respecting custody based on controverted allegations without having had the benefit of a full hearing" (Matter of Williams v Williams, 35 AD3d 1098, 1099-1100 [2006] [internal quotation marks and citations omitted]; accord Matter of Varner v Glass, 130 AD3d 1215, 1216 [2015]). With respect to the three-day pendente lite hearing, the father's due process challenge was rendered moot as Supreme Court's issuance of the final judgment of divorce superseded the prior pendente lite order (see Giannuzzi v Kearney, 127 AD3d 1350, 1351 [2015]; Batson v Batson, 277 AD2d 750, 751 [2000]).
With respect to the trial, the mother and the father were the only two witnesses to testify.[FN4] They were each subject to extensive direct and cross-examination and were able to submit numerous exhibits into evidence. Although Supreme Court did limit the father from [*2]providing certain additional direct testimony as it pertained to the children, it did so only after the father had already provided a full day of testimony pertaining to custodial issues — which included testimony with respect to applicable best interests factors such as his past performance as a parent, the parties' financial resources and their respective relationships with the children, as well as testimony regarding disputed allegations with respect to his alcohol use, domestic violence and his supervision of the younger child's relationship with her boyfriend. These matters were also revisited during cross-examination and in his redirect testimony in reply thereto. Accordingly, we find that Supreme Court's ruling was an appropriate exercise of the court's discretionary control over the trial and its calendar and was an effort to avoid repetitive testimony (see Matter of Braswell v Braswell, 80 AD3d 827, 829 [2011]; see generally Murray-Gardner Mgt. v Iroquois Gas Transmission Sys., 251 AD2d 954, 956 [1998]; compare Matter of Stukes v Ryan, 289 AD2d 623, 624 [2001]), as opposed to a disdainful attempt to limit the father's ability to introduce evidence or otherwise interfere with his due process rights (compare Matter of Varner v Glass, 130 AD3d at 1216; Matter of Middlemiss v Pratt, 86 AD3d 658, 659 [2011]). Ultimately, given the voluminous record before us — which included, among other things, the children's school and medical records, text messages and social media posts, Lincoln hearings with both children and a forensic custody evaluation report — we are satisfied that Supreme Court possessed sufficient information to render a fully informed determination as to the custody arrangement that would serve the best interests of the children (see Matter of Gerber v Gerber, 133 AD3d 1133, 1134-1135 [2015], lv denied 27 NY3d 902 [2016]; Matter of Gordon L. v Michelle M., 296 AD2d 628, 630 [2002]; compare Matter of Varner v Glass, 130 AD3d at 1216; Matter of Richardson v Massey, 127 AD3d 1277, 1278 [2015]).
Turning to the merits, when rendering a custody determination, the paramount concern is the best interests of the children and, in conducting such an analysis, courts must give consideration to such factors as each parent's past performance and relative fitness, willingness to foster the children's positive relationship with the other parent, ability to maintain a stable home environment and ability to provide for the children's intellectual and emotional development and overall well-being (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Antonella GG. v Andrew GG., 169 AD3d 1188, 1189 [2019]). Great deference is accorded to the trial court's fact-finding and credibility determinations, and its findings will not be disturbed as long as they are supported by a sound and substantial basis in the record (see Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [2021]; Elizabeth B. v Scott B., 189 AD3d 1833, 1835 [2020]).
Although both parents [*3]clearly love the children and are devoted to providing for their best interests, there is a sound and substantial basis in the record supporting Supreme Court's award of sole legal and physical custody to the mother. The evidence at the trial established that, in 1999, prior to the parties' April 2001 marriage, the mother purchased what would later become the marital residence and, throughout the duration of the marriage, was the primary wage earner and primary caretaker of the children, providing for their educational, medical and financial needs while also arranging for and attending their extracurricular activities. Although the father often transported the children to and from day care and school, prepared meals and was the caregiver for the children when the mother was traveling for work, he did not dispute that, prior to the commencement of the subject divorce action, it was the mother who had the primary role in attending to the children's overall needs.[FN5]
In September 2017, the mother and the father had a physical altercation at a pool party at the marital residence wherein the father attempted to forcibly grab the mother and throw her in the pool. As a result, the mother suffered bruising where the father had attempted to restrain her, prompting her to commence this divorce action. Following commencement of the action, the parties continued to reside together in the marital residence, but their relationship deteriorated to the point where they were unable to effectively communicate with one another for the sake of the children, rendering a joint custodial arrangement unfeasible (see Antonella GG. v Andrew GG., 169 AD3d at 1189; Matter of Jarren S. v Shaming T., 117 AD3d 1109, 1111 [2014]; Matter of Danielle TT. v Michael UU., 90 AD3d 1103, 1104 n [2011]). The mother and the father regularly argued, the father frequently made denigrating and disparaging remarks to the mother in front of the children, they were unable to agree on how to supervise and discipline the younger child — particularly with regard to her relationship with her boyfriend and her unsupervised use of electronics — and the father regularly undermined the mother's disciplinary authority in this regard.[FN6] Although by all accounts the mother and the younger child had a good relationship prior to September 2017, given the mother's role as the primary disciplinarian, the father's laissez-faire approach to supervision and discipline, coupled with the ever-increasing tension in the household during the pendency of this action, the mother frequently removed herself from the home in order to avoid additional conflict, and her relationship with the younger child admittedly suffered as a result. The mother did enroll both her and the younger child in counseling to try and address their relationship issues and the impending change in the family dynamics brought about by the divorce action. Conversely, the father demonstrated little to no insight into the increasingly deleterious [*4]effect that the parties' acrimonious relationship, his behavior and the pending divorce were having on the children's relationship with the mother, and he frequently discussed pending divorce matters in the children's presence, in direct contravention of Supreme Court's prior order.[FN7]
Ultimately, the record demonstrates that the mother was in the best position to provide a consistent and stable home environment and was the parent more likely to facilitate and encourage a healthy and meaningful relationship between the children and the father. The mother is employed as a deputy director of operations, she works a regular schedule from Monday through Friday from 7:30 a.m. to 4:00 p.m. and she has previously demonstrated her ability to provide for the children's educational, medical, mental health and financial needs. Despite the fact that the mother owns and will continue to reside in the marital residence, the father failed to offer any evidence with respect to where he planned to live after vacating the marital residence or how he intended to facilitate being the primary custodian of the children. Granting the mother primary physical custody provides the children with the stability of continuing to reside in the only home they have ever known and in the same school district they have always attended. Additionally, although the wishes of the younger child, who was 14 years old at the time of the trial, were entitled to consideration, this is but one factor for the court to consider in weighing her best interests and were not dispositive on the issue of custody (see Matter of Lorimer v Lorimer, 167 AD3d 1263, 1265 [2018], lv dismissed and denied 33 NY3d 1040 [2019]; Matter of Rivera v LaSalle, 84 AD3d 1436, 1438 [2011]). Supreme Court weighed the appropriate factors, including the strengths and weaknesses of both the mother and the father, and, according deference to the court's determination that the mother was more credible than the father, we cannot say that its decision to award the mother sole legal and physical custody of the children lacks a sound and substantial basis in the record (see Antonella GG. v Andrew GG., 169 AD3d at 1189-1190; Matter of Baker v Baker, 82 AD3d 1462, 1463 [2011]).
Garry, P.J., Lynch and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: The father subsequently withdrew that appeal.

Footnote 2: The stipulation further provided that the mother would pay the father $87,047.82 for his share of the marital residence and that, upon payment, the father would vacate the residence no later than April 26, 2019.

Footnote 3: The older child turned 18 during the pendency of this appeal and, therefore, the father's appeal insofar as it pertains to him is moot (see Matter of Akela Q. v Jack Q., ___ AD3d ___, ___, 143 NYS3d 622, 623 n [2021]).

Footnote 4: Although the father attempted to call one witness to testify on his behalf, Supreme Court did not permit her testimony as the father did not provide the parties or the court with prior notice of his intent to call her as a witness.

Footnote 5: Although the father indicated that he purchased groceries and paid for the children's cell phone plan and Netflix subscription, he did not otherwise financially contribute to the mother's mortgage, utilities or insurance throughout the duration of the parties' marriage.

Footnote 6: For instance, the father did not support the mother's monitoring of the younger child's cell phone use, he permitted the younger child to lock her door for hours at a time while engaging online with her boyfriend and he failed to adequately supervise her at various times when she was with the boyfriend, despite the mother's strong concerns and Supreme Court's order directing him to do same. Additionally, although the father purchased groceries and cooked dinner for the children, following commencement of this action, he would frequently not permit the mother to eat the food that he had purchased for him and the children.

Footnote 7: Although Supreme Court erred by considering the content of certain letters that the younger child wrote and the father's conduct, or lack thereof, in response thereto, we find such error to be harmless in light of the ample evidence regarding the parties' inability to communicate and the father's conduct in denigrating the mother and undermining her relationship with the children (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1199 [2017]; Matter of Thomas v Osborne, 51 AD3d 1064, 1069 [2008]).