Matter of Cecelia BB. v Frank CC. (2021 NY Slip Op 07323)





Matter of Cecelia BB. v Frank CC.


2021 NY Slip Op 07323


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

530508
[*1]In the Matter of Cecelia BB., Appellant,
v
Frank CC., Respondent. (Proceeding No. 1.)
In the Matter of Cecelia BB., Appellant,
v
Frank CC., Respondent. (Proceeding No. 2.) (And Four Other Related Proceedings.)

Calendar Date:November 22, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Noreen McCarthy, Keene Valley, for appellant.
Jeffrey E. McMorris, Glens Falls, for respondent.
Nicole R. Rodgers, Saratoga Springs, attorney for the child.
Elena J. Tastensen, Saratoga Springs, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Washington County (Michelini, J.), entered September 12, 2019, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation, and awarded sole custody of the subject children to respondent.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the divorced parents of two children (born in 2004 and 2001). The parties entered into a stipulation as to custody and visitation, which Family Court incorporated in its entirety into a May 2018 order. The court granted the parents joint legal custody of the children, with primary physical custody of the younger child to the mother and primary physical custody of the older child to the father. The father was also granted visitation with the younger child on alternate weekends, and the mother was directed to engage in family counseling with the older child, with the father to encourage the older child's participation therein. A set holiday schedule was also put into place.[FN1]
In August 2018, the mother filed a family offense petition against the father in which she alleged that there had been a fight between her, the father and the father's girlfriend during a custodial exchange, which she video-recorded, and that certain threats had been directed at her.[FN2] She also set forth allegations of domestic abuse that occurred during the parties' marriage and certain inappropriate conduct on behalf of the father and the girlfriend that had occurred in the children's presence. Later that same month, the mother filed a petition to modify the May 2018 order, alleging that the younger child no longer wished to visit the father because of fighting that occurred between the father and the girlfriend and that the older child was not attending school. The mother requested that the younger child's visits with the father be supervised, that the father's girlfriend be directed not to have contact with the younger child and that she be granted "full physical custody" of the older child. The father in turn filed a petition to enforce the May 2018 order, alleging that he was being denied visitation with the younger child. The mother filed her own violation petition shortly thereafter based upon the father's alleged failure to bring the older child to the court-ordered counseling and provide him with adequate medical and educational care.
In November 2018, the father filed a family offense petition regarding an incident reported to him by the younger child during which the mother took the younger child's cell phone and a physical altercation ensued. The younger child left the mother's residence after the incident and went to the father's house, where he remained for several days. Child Protective Services (hereinafter CPS) and local law enforcement were also made aware of the incident and, after investigation, determined that there was no reason [*2]why the younger child should not be returned to the mother. The mother demanded as much, but the father obtained a limited temporary order of protection against her in favor of the younger child, in effect until May 2019, and the father was awarded temporary sole legal and physical custody of the younger child. The mother responded by filing the final petition at issue here, also in November 2018, alleging that the father had violated the May 2018 order by filing a false report with CPS and failing to return the younger child to her custody. Following a fact-finding hearing on all six petitions and a Lincoln hearing at which both children were present, Family Court ordered, in pertinent part, that the father was to have sole legal and physical custody of both children and that the mother would have visitation with the children as she and the children were able to agree. The mother appeals.[FN3]
A parent seeking to modify an existing order of custody and visitation bears the burden of demonstrating that there has been a change in circumstances since entry of the prior order (see Matter of Zachary C. v Janaye D., 199 AD3d 1267, ___, 2021 NY Slip Op 06585, *1 [2021]; Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1040 [2021]), which may be established by evidence "that the relationship between the parents has deteriorated to the point where they simply cannot work together in a cooperative fashion for the good of their children" (Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1038 [2018] [internal quotation marks and citations omitted]; see Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1340 [2020]). Here, although the parties were able to stipulate to the prior custody arrangement notwithstanding a certain degree of animosity between them, hostility overtook their co-parenting relationship thereafter, and the evidence at the fact-finding hearing made clear that the children had been swept into that chaos, particularly during custodial exchanges. The mother had resorted to filming her interactions with the father, which she indicated was out of fear for her safety given past violence between them, but that filming captured inappropriate conduct attributable to both parties. The father's girlfriend was able to act as an intermediary between the parties to some extent previously, but that method also eventually unraveled. We therefore agree with Family Court that the parties are no longer able to engage in the cooperative, civil communication necessary to make parenting decisions jointly, a change in circumstances that in turn warrants inquiry into the continued best interests of the younger child (see Matter of Quick v Glass, 151 AD3d 1318, 1319-1320 [2017]; Matter of Kylene FF. v Thomas EE., 137 AD3d 1488, 1489-1490 [2016]; Matter of Schlegel v Kropf, 132 AD3d 1181, 1182 [2015]; Matter of Deyo v Bagnato, 107 AD3d 1317, 1318-1319 [2013], lv denied 22 NY3d 851 [2013]).
As to best interests, pertinent factors include "the quality of each [*3]parent's home environment, the need for stability in the child's life, the parents' past performance, the willingness of each parent to foster a positive relationship between the child and the other parent and the ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Jamie UU. v Dametrius VV., 196 AD3d 759, 760-761 [2021]; see Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1167 [2020]). As Family Court was in a superior position to observe and assess witness testimony and demeanor during the fact-finding hearing, its credibility assessments and factual findings are accorded great deference, and its custodial determination will not be disturbed so long as it is supported by a sound and substantial basis in the record (see Matter of Celinda JJ. v Adrian JJ., 198 AD3d 1203, 1204 [2021]; Matter of Tiffany W. v James X., 196 AD3d 787, 792 [2021]).
The evidence from the fact-finding hearing demonstrates that the mother was very engaged in the younger child's life while he was in her custody. She supervised his academics, an area in which he then excelled, attended his many sporting events, arranged family counseling and other therapeutic opportunities for him and facilitated his participation therein, and she demonstrated appropriate parental concern over issues faced by teenagers, such as exposure to drug use. However, the record also supports Family Court's observation that the mother was unwilling to see her part in the deterioration of her relationship with both the father and the children, which was readily apparent in her own video footage, for example. The November 2018 incident also played a significant role in that deterioration. The mother and the younger child, in reports to the father and the police, provided differing accounts as to the catalyst and intensity of that incident, and the extent of the mother's physical conduct during the altercation. Irrespective of whether the mother's actions were permissible discipline, as she maintains, or a disproportionate reaction to teenage behavior taken out of anger and frustration, it is clear that the incident deeply affected the younger child, who refused to have any contact with the mother from that point onward. Although CPS opened an investigation into the incident and quickly determined that the allegations of physical abuse were unfounded, and police determined that there was no reason that the younger child should not return home, the mother took no responsibility whatsoever for the incident, largely blaming the child for his reactions to her.
The father's parenting was properly characterized by Family Court as lackadaisical. There is a considerable amount of evidence that he neglected, among other responsibilities, his obligation to ensure that the younger child's educational needs were met. It is not disputed that the younger child's academic performance markedly declined in the period preceding the hearing, including [*4]while in the father's custody. Notwithstanding the father's impression at the time of the hearing that the younger child was doing "pretty well" in school, the child had gone from being an honor roll student to failing courses and enrolled in summer school. His attendance at school also suffered while under the father's care, which can be only partly explained by the lengthy commute to school he had from the father's residence, and there is an abundance of evidence that the older child was chronically truant and then dropped out of school while in the father's custody. We agree, however, with Family Court's reasoning that the younger child's decline in these respects may be attributed to both parties, given the long-term stress that the younger child had been under because of ongoing court proceedings and the worsening relationship between the parents, in addition to an apparent lack of structure in the father's household.[FN4] The younger child also was no longer involved in sports or any other extracurricular activities. He no longer participated in counseling once in the father's custody, and, although the allegations of inadequate medical care more directly pertain to the older child, the younger child had not, at the time of the fact-finding hearing, seen a doctor or a dentist in the approximately nine months that he had lived with the father. Despite his firsthand knowledge of such, the father also seemed unconcerned with issues of drug use in his home.
Family Court weighed the appropriate factors, including the strengths and weaknesses of both the mother and the father and the support they could provide the younger child with respect to his intellectual and emotional well-being, and we cannot say that its decision to award the father sole legal and physical custody of the younger child lacks a sound and substantial basis in the record.[FN5] The November 2018 incident clearly had a significant impact on the younger child, 15 years old at the time of the underlying hearings, and his reasoned wishes, made clear by his attorneys, were entitled considerable weight (see Matter of Anwar RR. v Robin RR., 196 AD3d 756, 759 [2021]; Vickie F. v Joseph G., 195 AD3d 1064, 1067-1069 [2021]; Matter of Daniel XX. v Heather WW., 180 AD3d at 1167; Matter of Rivera v LaSalle, 84 AD3d 1436, 1438 [2011]).[FN6] However, the mother is correct that Family Court improperly delegated its authority to the younger child when it ordered that the mother's visitation would be only as she and the younger child could agree.
"Generally, the best interests of a child lie in having healthy and meaningful relationships with both the custodial and noncustodial parent" (Matter of Carin R. v Seth R., 196 AD3d 776, 777 [2021] [citations omitted]; see Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [2020]). Thus, "[u]nless [visitation] is inimical to the child[]'s welfare, the court is required to structure a schedule which results in frequent and regular access by the noncustodial [*5]parent" (Matter of Jessica HH. v Sean HH., 196 AD3d 750, 755 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Timothy D. v Becki C., 195 AD3d 1081, 1082 [2021]). The court cannot delegate to anyone, including a child, its authority to do so (see Matter of Paul JJ. v Heather JJ., 184 AD3d 956, 958 [2020], appeal dismissed 35 NY3d 1073 [2020]; see Kimberly C. v Christopher C., 155 AD3d 1329, 1335 [2017]), as such delegation can have "the practical effect of denying [a parent] his [or her] right to visitation with his [or her] child indefinitely without the requisite showing that visitation would be detrimental to the child's welfare" (Matter of Merkle v Henry, 133 AD3d 1266, 1268 [2015] [internal quotation marks, brackets and citation omitted]; see Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1273 [2019]).
Family Court's rationale for its parenting schedule — that a teenager cannot be forced to do something that he or she does not want to do — falls far short of satisfying its obligation to provide the mother with frequent and regular access to the younger child and does nothing to support a healthy, meaningful relationship between the two. Although the younger child did not want to visit with the mother at the time of the underlying proceedings, there is nothing in the record to demonstrate that visits with her would be harmful to him, and, given his feelings toward the mother at that time, visitation conditioned upon his agreement was untenable (see Matter of Kelley v Fifield, 159 AD3d 1612, 1613 [2018]; Matter of Staff v Gelunas, 143 AD3d 1077, 1079 [2016]).[FN7] We therefore remit this matter to Family Court for the fashioning of an appropriate, more definitive visitation schedule and the allocation of any other suitable resources to restore their relationship (see Matter of Heather SS. v Ronald SS., 173 AD3d at 1273; Matter of Cornell S.J. v Altemease R.J., 164 AD3d 1184, 1185 [2018], lv denied 32 NY3d 913 [2019]; Matter of Christine TT. v Dino UU., 143 AD3d 1065, 1068-1069 [2016]; Matter of Harrell v Fox, 137 AD3d 1352, 1355 [2016]; Matter of Merkle v Henry, 133 AD3d at 1268; Matter of Casolari v Zambuto, 1 AD3d 1031, 1031 [2003]). That said, Family Court's error has been amplified by the inherent length of the appellate process. The mother has now gone years without visits with the younger child and, thus, without a meaningful opportunity to repair her relationship with him, and he is now nearly 18 years old and likely will reach the age of majority before Family Court has the opportunity to address its mistake. This underscores the importance of enabling some form of visitation between a parent and child wherever possible.
Next, the mother's claim of bias is not preserved for our review given her failure to object on that ground or seek recusal (see Matter of Amanda YY. v Faisal ZZ., 198 AD3d 1125, 1129 [2021]; Matter of Mary Ellen H. v Joseph H., 193 AD3d 1275, 1276 [2021]), and, if it were properly [*6]preserved, we would find her many allegations to be unavailing. Additionally, contrary to the mother's assertion, the record reveals that the younger child received zealous representation throughout these proceedings, and his wishes were repeatedly made clear on the record (see generally Matter of Payne v Montano, 166 AD3d 1342, 1345 [2018]). As to the representation that the mother was provided, although the assignment of at least four different attorneys, including a new attorney for each hearing day, is far from ideal, the reassignments were largely due to attorney employment changes versus any discord between the mother and her counsel, and each attorney was appropriately prepared notwithstanding the short notice they were sometimes given before the next court date. The alleged failings of the various attorneys are also largely inconsequential to the outcome of these proceedings given the evidence adduced at the hearings, and we therefore find that the mother has failed to demonstrate that, in totality, she was deprived of her right to meaningful representation (see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010-1011 [2018]; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088-1089 [2017], lv denied 30 NY3d 908 [2018]; Matter of James P., 17 AD3d 733, 734-735 [2005]; Matter of Thompson v Jones, 253 AD2d 989, 990 [1998]). The remaining contentions, to the extent not expressly addressed herein, have been evaluated and found to be without merit.
Garry, P.J., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided that petitioner's visitation with the younger child would be as she and the child were able to agree; matter remitted to the Family Court of Washington County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The mother appealed from the May 2018 order, raising issues concerning, among other things, Family Court's alleged bias toward her and the efficacy of the representation provided to the children, but her appeal was dismissed as no appeal lies from an order entered on consent (Matter of Frank CC. v Cecilia BB., 182 AD3d 642, 644 [2020]).

Footnote 2: This petition, as with several others here, was filed in the Family Court of Warren County and the proceeding was thereafter transferred to Washington County.

Footnote 3: The older child has turned 18 years old during the pendency of this appeal, and any challenges to Family Court's order as it pertains to him are therefore moot (see Vickie F. v Joseph G., 195 AD3d 1064, 1065 n 3 [2021]; Matter of Sandra R. v Matthew R., 189 AD3d 1995, 1996 n 3 [2020], lv dismissed and denied 36 NY3d 1077 [2021]).

Footnote 4: The attorney for the younger child has regrettably informed this Court that the younger child has since dropped out of school.

Footnote 5: The attorney for the younger child supports Family Court's determination.

Footnote 6: Although not raised by the parties, we feel compelled to note that, given the younger child's close relationship with his older brother — who had clashed with the mother long before the commencement of the subject proceedings and already been residing with the father for some time — the better practice here would have been to hold separate Lincoln hearings for each child. It was in fact the younger child that expressed his preference for a Lincoln hearing over testifying in court. It is clear from Family Court's decision that it gave significant weight to the younger child's wishes, and it is impossible to know what the younger child may have shared if provided a more appropriate, and truly confidential, forum in which to do so (see generally Eschbach v Eschbach, 56 NY2d 167, 172-173 [1982]; Matter of Lincoln v Lincoln, 24 NY2d 270, 271-272 [1969]).

Footnote 7: It is not clear to us why Family Court would not have ordered therapeutic visits between the mother and the younger child, as it did with respect to the older child when he was about the same age, or, at the very least, some mode of therapeutic intervention (see generally Matter of Timothy D. v Becki C., 195 AD3d at 1082; Matter of Robert TT. v Carol UU., 300 AD2d 920, 922 [2002]). We note that it is undisputed that the mother consistently arranged and attended the counseling that was previously ordered for her and the older child, even knowing that it was unlikely that he would attend.