Matter of Melissa H. v Jordan G. (2025 NY Slip Op 02830)

Matter of Melissa H. v Jordan G.

2025 NY Slip Op 02830

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

CV-23-1905
[*1]In the Matter of Melissa H., Petitioner,
v
Jordan G., Appellant. (And Another Related Proceeding.)

Calendar Date:March 28, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Lisa K. Miller, McGraw, for appellant.
Pamela Doyle Gee, Big Flats, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Chemung County (Richard Rich Jr., J.), entered July 18, 2023, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unwed parents of the subject child (born in 2013). Under a January 2020 custody order, the mother had legal custody and primary placement of the child, with the father ostensibly having parenting time with the child every other weekend as well as a weeknight evening visit. Family Court conditioned the father's parenting time upon, among other things, the father attending all the child's medical appointments that concerned her diabetes. Additionally, if the father complied with those conditions, his parenting time was to be expanded as specifically provided in the order.
In October 2021, while the father was picking up the child from the mother's residence, an incident transpired because the child did not want to go with the father and, ultimately, jumped out of his car at a stop sign and ran back to the mother's residence. As a result, regular visitation with the father ceased abruptly. The mother subsequently filed a petition to modify the prior order because the child did not want to visit the father. In March 2022, the court entered a temporary order that the father have parenting time with the child once a week in a public place, which did not occur. Thereafter, the father filed an enforcement petition alleging that the mother has not informed him of the child's medical appointments or changes in health care as was required by the prior custody order. After a fact-finding hearing, Family Court granted the mother's petition to the extent of granting her sole physical placement and suspending the father's parenting time. The court did, however, order that the father was to have parenting time "solely in a therapeutic/counseling setting" without any specific schedule. The court also dismissed the father's enforcement petition. The father appeals.[FN1]
Family Court erred in granting the mother's modification petition and suspending the father's parenting time. Initially, the father concedes that the mother established "that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what custodial arrangement is in the best interests of the child" (Matter of Matthew TT. v Erin TT., 222 AD3d 1242, 1242 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Harvey P. v Contrena Q., 212 AD3d 1023, 1024 [3d Dept 2023]), thus, we turn directly to the issue of best interests."In determining whether modification of a prior [visitation] order will serve the best interests of the child, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the [*2]child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Nathan PP. v Angela PP., 205 AD3d 1082, 1083 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Devin W. v Jessica X., 204 AD3d 1111, 1112 [3d Dept 2022]). "This Court accords great deference to Family Court's factual findings and credibility determinations and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1076 [3d Dept 2024] [internal quotation marks, ellipsis and citations omitted]).
As relevant here, "[g]enerally, the best interests of a child lie in having healthy and meaningful relationships with both the custodial and noncustodial parent" (Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1416 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1234 [3d Dept 2023]). "Unless visitation is inimical to the child['s] welfare, the court is required to structure a schedule which results in frequent and regular access by the noncustodial parent. In so doing, the court cannot delegate its authority to determine visitation to either a parent or a child" (Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 905 [2020]; see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 755 [3d Dept 2021]). This is so because "such delegation can have the practical effect of denying a parent his or her right to visitation with his or her child indefinitely without the requisite showing that visitation would be detrimental to the child's welfare" (Matter of Cecelia BB. v Frank CC., 200 AD3d at 1416 [internal quotation marks, brackets and citations omitted]; see Matter of Paul JJ. v Heather JJ., 184 AD3d 956, 958 [3d Dept 2020], appeal dismissed 35 NY3d 1073 [2020]).
The testimony at the fact-finding hearing demonstrates that the child began working with a mental health therapist at her school in March 2020 due to anxiety. Then, in the fall of 2021, the child began experiencing anxiety around the father's parenting time, resulting in her expressing that she did not want to see the father. It is unclear from the record what, if anything, was the source of this anxiety. It does appear, however, that the mother and the father were dealing with the child's anxiety in different ways, which had the effect of the child expressing a very strong preference for the mother. The child's therapist testified that she had diagnosed the child with adjustment disorder with anxiety and posttraumatic stress disorder (hereinafter PTSD). When asked by the father's attorney what the traumatizing event was that caused the [*3]PTSD, the therapist was at first reluctant to provide this information, stating that doing so could have an impact on her rapport with the child. Family Court interjected to clarify that at least part of the reason for fact-finding was so that the court could determine whether "there [is] something that the father did that is causing the PTSD or the extreme reaction to not see [the father] at all for over a year." The therapist then testified that, on a trauma assessment completed in April 2022, the child "list[ed] several things," only one of which involved the father. Specifically, that the father "threatened [the child's] family." As of the time of the therapist's testimony, she had "not gotten to the narrative part of . . . therapy yet," so she did not have any specifics and could not provide further information. Soon thereafter, the court again interjected, stating that it was "still very lost as to what triggered this" and that it needed facts but, instead, kept hearing conclusions. After the therapist stated that she could not provide specifics because she had not gotten to that point in therapy with the child, the court called an off-the-record conference in chambers. After doing so, all parties agreed to an adjournment and that, in the meantime, a full forensic evaluation of the child was to be completed.
No forensic evaluation ever occurred. Multiple days of fact-finding subsequently ensued during which the bulk of the testimony was from the mother and the father. During this testimony, there was no further mention of the father having threatened the child's family as was indicated in the child's trauma assessment. Although there was testimony regarding occurrences at the father's home during his parenting time which could have caused the child anxiety, such as the father placing the child's insulin pump in a location that caused her pain, this testimony was largely hearsay testimony by the mother. At the cessation of the testimony, when the attorney for the child (hereinafter AFC) was asked if she had anything to offer, the AFC informed Family Court that the father's attorney had mentioned potentially requesting a Lincoln hearing and that, if that wasn't still the case, the AFC wanted to discuss with the child the possibility of doing one. The father's attorney clarified that she thought a Lincoln hearing was necessary, and Family Court agreed, as did the mother's attorney. The court scheduled a Lincoln hearing and informed the parties that they could submit questions. The father inquired as to what a Lincoln hearing was and, after learning he could not be present and expressing concern for how such a hearing might affect the child, he was advised to discuss it with his attorney and advise the court of any objection. The court further informed the parties that, if either side objected, the Lincoln hearing would be postponed and there would be argument about whether or not to hold one. Days later, the father's attorney sent a letter to [*4]the court withdrawing the request for a Lincoln hearing. There was no further communication from the court or argument regarding whether to have the Lincoln hearing, and one was never held.
Soon after, Family Court entered the order on appeal wherein it suspended the father's parenting time "subject to the father and the child engaging in joint counseling with the child's current therapist; if the child's current therapist is unavailable then the parties shall consult with the therapist to identify an appropriate alternative."[FN2] The court commented that this was a drastic remedy, but that it was in the child's best interests. We do not, however, "agree with the court's assessment of the evidence and conclude that the court's determination is not supported by a sound and substantial basis in the record" (Matter of Nicole TT. v David UU., 174 AD3d 1168, 1172 [3d Dept 2019]; see Matter of Rosenkrans v Rosenkrans, 154 AD3d 1123, 1125-1126 [3d Dept 2017]). Initially, the court's order repeatedly misstates testimony and then relies upon these misstatements in reaching the conclusion that the father's parenting time should be suspended.[FN3] For example, the court stated that the child was engaging in self-mutilating behavior as a reaction to stress caused by the father's parenting time. This is not supported by the testimony, which reveals that the child began exhibiting self-harming behaviors approximately five months after the father's parenting time ceased. Erroneous factual recitations aside, we are also troubled by the court suspending the father's parenting time without having the child and parents undergo a full psychological evaluation.[FN4] Given the lack of testimony regarding what has caused the child's PTSD, such an evaluation was necessary to assist the court in determining the child's best interests. Additionally, while a Lincoln hearing is not required to be held in every case, "conducting such hearings is the preferred practice" (Matter of Lorimer v Lorimer, 167 AD3d 1263, 1265 [3d Dept 2018] [internal quotation marks and citation omitted], appeal dismissed & lv denied 33 NY3d 1040 [2019]; see Matter of Mary Ellen H. v Joseph H., 193 AD3d 1275, 1276-1277 [3d Dept 2021]). Given the absence in the record of the basis for the child's anxiety surrounding parenting time with the father, as well as the mother's request for one, we find that the court erred by failing to conduct a Lincoln hearing without any further discussion or an assessment, on the record, that a Lincoln hearing " 'may do more harm than good' " (Matter of Mary Ellen H. v Joseph H., 193 AD3d at 1277, quoting Matter of Merwin v Merwin, 138 AD3d 1193, 1195 [3d Dept 2016]; compare Matter of Merwin v Merwin, 138 AD3d at 1195).
Accordingly, on this record, the necessary "compelling reasons and substantial evidence that [visitation with the father is] detrimental to the child[ ]" are lacking and we must reverse (Matter of Laware v Baldwin, 42 AD3d 696, 697 [3d Dept 2007] [internal quotation [*5]marks and citation omitted]). "Although our fact-finding authority is as broad as that of Family Court, given the passage of time since the fact-finding hearing [as well as the failure to order the parties to undergo a psychological evaluation and conduct a Lincoln hearing], we remit the matter to Family Court for further updated fact-finding . . . and a [visitation] determination that reflects the best interests of the child" (Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1425 [3d Dept 2018] [citations omitted]; see Matter of Nicole TT. v David UU., 174 AD3d at 1172). Upon remittal, Family Court must "promptly determine whether parenting time with the father would be detrimental to the child[ ] and, if not, [further determine] the type of parenting time warranted by the record evidence (e.g., therapeutic visitation, supervised parenting time, unsupervised parenting time, etc.), the amount, duration and location of such parenting time (e.g., a graduated schedule, overnight parenting, etc.) and any other provisions that would develop and/or promote a healthy and meaningful relationship between the father and the child[ ] (e.g., reasonable phone/video contact, written communication, etc.)" (Matter of Theressa M. v Gaddiel M., 228 AD3d 1040, 1041 [3d Dept 2024] [internal quotation marks and citations omitted]).[FN5] In view of the foregoing, we need not reach the father's remaining contentions.
Aarons, J.P., Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as suspended respondent's parenting time and restricted respondent's ability to apply for modification; matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court's decision, and, pending said proceedings, the terms of said order shall remain in effect on a temporary basis; and, as so modified, affirmed.

Footnotes

Footnote 1: The mother did not file a brief on appeal.

Footnote 2: We note that, at the fact-finding hearing, the child's therapist testified that "reunification is out of [her] scope of practice."

Footnote 3: For example, Family Court appears to attribute testimony that, after placing the child's insulin pump, the father "yelled at the child and threatened to 'beat her ass' " to the therapist, but the therapist never testified to this. The court also stated that the therapist was "aware the father forbade the child using a transition object for visitation" and that the father opposed a third party being present at visitation. The therapist did not testify to this.
Footnote 4: The failure to so order is perplexing given that Family Court repeatedly stated that it would not consider allowing the child to stop seeing the father in the absence of expert testimony.

Footnote 5: Should Family Court determine that therapeutic visitation is in the child's best interests, an appropriate professional specializing in family therapy is necessary.